PIESIK, Respondent, vs. DEUSTER and another, Appellants.*

*September 17—October 12, 1943.*

* Motion for rehearing denied, with $25 costs, on December 7, 1943.

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham.*

*Alvin L. Zelonky* of Milwaukee, for the respondent.

MARTIN, J. The plaintiff's car was a 1935 Chevrolet coach. In the car at the time of the accident were the plaintiff, Mr. and Mrs. Sylvester Zisk, who occupied the front seat of the car with plaintiff, and a fourth party, a fellow employee of the plaintiff, who occupied the rear seat. Defendant Deuster was operating a 1941 Oldsmobile sedan. The only other occupant in his car was his wife who sat with him in the front seat. The Deusters were proceeding to Burlington, Wisconsin, to view the remains of Mr. Deuster's uncle, who had died a short time before. The plaintiff Piesik and the occupants of his car were returning from a picnic of the employees of the Globe Steel Tube Company at Long Lake. The highway was surfaced with black-top macadam and was approximately twenty feet in width. Both cars were traveling at approximately the same speed.

Plaintiff testified that he first saw the lights of the Deuster car when they were from one thousand to fifteen hundred feet away; that he did not notice anything particular about the car at that time or pay any attention to it; that the lights did not interfere with his vision; that he next saw the lights when the car was from two hundred to two hundred fifty feet away; that it seemed to be straddling the middle of the highway; that the headlights were very bright and that they blinded him; that he tried to swerve away to his right but did not remember if he did or not; that before he could do anything the cars had collided; that the collision took place on the east side of the highway.

On cross-examination he testified that after he saw the lights of the Deuster car at a point of from two hundred to two hundred fifty feet away he did not see the other car and did not know whether it had continued on the east side of the road or on the west side of the road. He further testified that just before the collision he had been talking to Mr. and Mrs. Zisk about a brawl, a fight, at the picnic.

Mrs. Lillian Zisk testified that she saw the Deuster car when it was about three blocks away; that she noticed the headlights;

that she did not know on what side of the road it was, did not pay any particular attention to it; that she next noticed it when it was about one hundred feet away; that it seemed to be on their side (east side) of the highway; that plaintiff's car was on their own side; that she hollered, "Gary, look out!" On cross-examination she testified that she had no trouble seeing the Deuster car as the two cars approached each other; that she was not troubled with any blinding lights; that she could see perfectly all right.

Sylvester Zisk testified that he did not notice the Deuster car until his wife called attention to it; that it was then about one hundred feet away, and was straddling the center of the highway; that before the impact the plaintiff's car was in the center of their side of the highway; that he did not have any difficulty in seeing the Deuster car.

The defendant Deuster testified that when he first noticed plaintiff's car it was on its right side of the highway; that it remained on the right side until it was about fifty feet away; that it then swerved to his (Deuster's) side of the road; that it came over about two to two and one-half feet on his (Deuster's) side of the road; that it was that much to the west of the center line, if there had been a center line; that the swerve was sharp; that after it swerved to the west half of the road it stayed on that side until the moment of the impact; that plaintiff's car glanced off his (Deuster's) front bumper and tore along the entire driver's side of his car. He further testified that when he saw the lights of plaintiff's car approaching he dimmed his own lights; that if there had been a center line he would have been about two feet to the west of the line; that the position of his car did not change at any time from then until the instant of the impact.

Mrs. Deuster testified that her husband's car was on its right-hand side of the highway; that when plaintiff's car was about fifty feet away it made a swerve to the west side of the road; that the left sides of the cars came together; that when she first saw plaintiff's car it was on its right side of the road;

that it swerved to the left side when it was fifty feet away; that her husband's car was well within its own side of the highway and remained on its side of the highway.

Defendants argue that the undisputed physical facts indicate the point of impact was from two to two and one-half feet west of the center of the road. We have given careful consideration to the physical facts relied on by defendants. We are of the opinion that they do establish that at the point of impact the plaintiff's car was approximately two feet over the center line of the road. This conclusion does not exonerate defendant Deuster from causal negligence. The theory on which the verdict was framed and submitted did not confine the inquiry as to the negligence of the parties to the exact moment of impact.

There is evidence to warrant the jury finding that as the cars approached and were within a distance of fifty feet from the point of impact the whole or part of both cars were on the wrong side of the center line of the highway. Under the evidence and the instructions of the court the jury had a right to consider whether either or both parties, assuming they were on the wrong side of the road, failed to act timely and efficiently in getting on their right side of the road. There is sufficient evidence to sustain the affirmative answers to the first, second, third, and fourth questions of the special verdict. By their answers to these questions the jury found both drivers causally negligent in the same respect, namely, that both failed to pass to the right giving to the other at least one half of the main traveled portion of the roadway as nearly as possible. There is no contention or basis of negligent speed or lookout on the part of either driver. All the occupants of each car saw the headlights and approach of the other car. There is no evidence that the headlights did not conform to the standard fixed by sec. 85.06 (2), Stats. While plaintiff testified that he was momentarily blinded by the headlights of the Deuster car, both Mr. and Mrs. Zisk, who sat by his side in the front seat,

testified that they had no difficulty in seeing the approach of the Deuster car. They were not blinded, momentarily or otherwise, by his lights.

Defendants contend that the negligence of the plaintiff should be considered as a matter of law to be as great as or greater than that of defendant Deuster. The jury has found plaintiff guilty of the same act of negligence of which they found defendant Deuster guilty. This is the serious question in the case. In *Hansberry v. Dunn,* 230 Wis. 626, 632, 284 N. W. 556, quoting from *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 407, 245 N. W. 97, the court said:

"Cases in which a court can say as a matter of law that the negligence of plaintiff is equal to or greater than that of defendant 'will ordinarily be limited to cases where the negligence of each is of precisely the same kind and character.'"

In *Evanich v. Milwaukee E. R. & L. Co.* 237 Wis. 111, 114, 295 N. W. 44, the court said:

"Under the evidence accepted by the jury as controlling, it is apparent that the negligence of the deceased and that of the motorman were so like each other in kind and character or so nearly equivalent as to be comparable as a matter of law. *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97; *Brown v. Haertel,* 210 Wis. 345, 244 N. W. 630; *Callaway v. Kryzen,* 228 Wis. 53, 279 N. W. 702."

The physical facts have a bearing on the apportionment of the total negligence. We have said that they establish that at the point of impact plaintiff's car was approximately two feet over the center line of the road. This conclusion is based on photographs received in evidence, gouge marks in the pavement, and tire marks leading to the place where plaintiff's car came to a stop over the ditch on the west side of the highway; also water marks made by leakage from the radiator of the Deuster car, and the position it traveled after the collision before coming to a stop. The cars sideswiped. The contact

was on the left front fender of plaintiff's car and all along the left side of the Deuster car. There appears to have been no damage done to the body on the left side of plaintiff's car. The left side of the body of the Deuster car was damaged back to the rear fender.

After the impact plaintiff's car came to a stop one hundred four feet north and on the extreme west side of the road. A black tire mark made by one or both of the right wheels of plaintiff's car led from where the cars collided to the right rear wheel of plaintiff's car. Several witnesses, including two deputy sheriffs who arrived at the scene of the accident a few minutes after it occurred and an automobile mechanic, testified as to the location and direction of travel of both cars after the collision. They and other witnesses testified that there were two gouge marks in the black-top surface of the road. They all testified that these gouge marks were from two to two and one-half feet west of the center of the road. They described the marks, said they were fresh, and looked as though they had just been made.

The officers made certain measurements and observed the tire marks leading up to the right rear wheel of the plaintiff's car where it stood across the ditch on the west side of the road. They and the automobile mechanic testified as to the location of certain dirt and debris which fell on the highway from one or both of the cars where they collided. This dirt and debris was to the west of the center of the road. They described a second mark on the surface of the highway which extended from the gouge marks north and to the left rear wheel of plaintiff's car. They described the marks as having been made by something that was dragging. These officers, the automobile mechanic, and several other witnesses testified to water marks on the highway which extended south from the gouge marks to where the Deuster car came to a stop. This water line was on the west side of the road and ended at the front end of the Deuster car. The garage mechanic who assisted

in the removal of plaintiff's car from the ditch testified that they were going to tow the car out of the ditch but could not move it, and found that the foot brake and clutch were jammed to the floor; that it was necessary to loosen the brakes with a crowbar; that the left front wheel of the car was broken; that there was no braking power applied to the left front wheel; that the braking power was applied to the right front wheel, which accounts for the heavy skid mark on the road surface leading up to the right rear wheel of plaintiff's car where it came to a stop after the collision. There is no conflict in the evidence with respect to the location of the gouge marks. Eight witnesses testified that they were from two to two and one-half feet west of the center of the road. We think it unnecessary to pursue the physical facts further.

In the instant case the plaintiff and defendant Deuster were found guilty of causal negligence of the same kind and character. Because it appears under the particular facts of this case that the negligence of the plaintiff is at least equal to that of the defendant Deuster, it must be held, as a matter of law, that there can be no recovery.

*By the Court.*—Judgment reversed. Cause remanded with directions to change the answer to sub. (a) of question 5 from "65%" to "50%;" and to change the answer to sub. (b) of question 5 from "35%" to "50%;" and upon the verdict so changed to dismiss the complaint.