STRUPP and another, Plaintiffs and Appellants, v. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Defendants and Respondents: SUPERIOR MUTUAL INSURANCE COMPANY, Impleaded Defendant and Respondent.

MOTORS INSURANCE CORPORATION, Plaintiff and Appellant, v. EBERT and another, Defendants and Respondents.

*June 5—June 27, 1961.*

160

For the appellants there was a brief by *Phillips, Phillips, Hoffman & Lay* of Milwaukee, for Cornelius Strupp and Janice E. Aussem; and by *Ben G. Slater* of Milwaukee, attorney, and *Bertram J. Hoffman* of Milwaukee of counsel, for Motors Insurance Corporation, and oral argument by *N. Paley Phillips.*

For the respondents there was a brief and oral argument by *John W. Emmerling* of Milwaukee.

For the impleaded respondent there was a brief by *Goldschmidt, deVries, Hollander & Vlasak* of Milwaukee.

FAIRCHILD, J. 1. *Defective verdict.* The verdict was defective as to the essential liability questions. Ten jurors agreed that both drivers were causally negligent, but only nine of those 10 agreed on the comparison. ". . . If more than one question must be answered to arrive at a verdict on the same cause of action, the same five sixths of the jurors must agree on all such questions." Sec. 270.25 (1), Stats.

When a comparison of negligence is called for,

". . . it is necessary for at least the same 10 jurors to agree on every question that it is necessary for them to consider in answering the question of comparative negligence. . . . the same 10 jurors must agree as to the items of causal negligence found and the comparative effect of the causal negligence of the parties in producing the resulting damages." [1]

2. *Comparison as a matter of law.* The circuit court treated the jury's answers with respect to causal negligence of each driver as verities established by the verdict, and concluded that the found causal negligence of Mrs. Nichols was equal to the found causal negligence of Mr. Ebert so that the complaint must be dismissed.

Where a jury finds on conflicting evidence that both parties are negligent and that some percentage less than fifty of the causal negligence is attributable to plaintiff, and where the court deems as a matter of law that the found negligence of plaintiff is at least equal to the found negligence of defendant, it could be argued with some logic that the findings are

[1] *Scipior v. Shea* (1948), 252 Wis. 185, 189, 31 N. W. (2d) 199; *Fleischhacker v. State Farm Mut. Automobile Ins. Co.* (1956), 274 Wis. 215, 218, 79 N. W. (2d) 817; *Hupf v. State Farm Mut. Ins. Co.* (1961), 12 Wis. (2d) 176, 188, 107 N. W. (2d) 185.

inconsistent and that a new trial is required. In such cases, however, it has been the practice to recognize the findings as to negligence and set aside the comparison.[2] Thus the findings as to the existence of negligence and its causality are accorded somewhat greater dignity than the answer as to comparison. This practice seems justified because of the unique relationship between these types of findings. Necessarily the jury must resolve the issues as to existence of negligence first, and the answer to the comparison question is dependent upon the facts determined by the other answers. In general, it is probably more difficult to make an exact comparison of negligence than to decide whether particular conduct was negligence.

It might be argued that where a verdict is defective for the reason appearing in the present case, there is more reason for ordering a new trial without testing the soundness of the comparison answer by assuming that the answers on the issues of the existence of causal negligence are true, but we see no substantial probability of injustice in following the same practice as where the verdict is free from defect.

In determining that Mrs. Nichols' found negligence was, as a matter of law, equal to Ebert's found negligence, the circuit court relied on language in decisions of this court such as "where the negligence of both is of exactly the same nature and kind, the ruling must be, as a matter of law, that each contributed 50 per cent to the cause of the accident,"[3] "the negligence of each was of the same kind and character,"[4] and "negligence of the same kind and character."[5]

---

[2] See *Piesik v. Deuster* (1943), 243 Wis. 598, 11 N. W. (2d) 358; *Evanich v. Milwaukee E. R. & L. Co.* (1941), 237 Wis. 111, 295 N. W. 44.

[3] *Langworthy v. Reisinger* (1946), 249 Wis. 24, 28, 23 N. W. (2d) 482.

[4] *Wagner v. Home Mut. Casualty Co.* (1953), 262 Wis. 673, 675, 56 N. W. (2d) 539.

[5] *Piesik v. Deuster, supra,* footnote 2, page 605.

Such terms may appropriately describe the facts of particular cases, but do not imply that the invasion of the left-hand side of the highway by one driver is necessarily of equal importance to an invasion by the other driver; nor that the inattentiveness of one is necessarily of equal importance to the inattentiveness of the other.

"It is true that the court may occasionally be able to determine from the record that two items of negligence of the same character are equal in quality or that as a matter of law one of them is greater than the other. This is more apt to be possible in cases where speed, lookout, or the violation of some particular rule of the road is involved. It is less apt to be possible in cases involving findings of negligence with respect to management and control. In any event, it must be possible from all the circumstances of the case as disclosed by the record for this court to be able to say that the negligences are equal in quality and that is why this court has said that it can rarely come to this conclusion. We are satisfied, however, that the court may not adopt a rule of thumb that will check off automatically lookout against lookout, control against control, etc., holding these items equal as a matter of law in every case." [6]

"This court in recent years has declared many times that the jury in comparing negligence is not required to attribute the same percentage of negligence to the two participants of a motor vehicle accident merely because they are each guilty of the same category of negligence. *Evjen v. Packer City Transit Line* (1960), 9 Wis. (2d) 153, 163, 100 N. W. (2d) 580, and *Taylor v. Western Casualty & Surety Co.* (1955), 270 Wis. 408, 411, 71 N. W. (2d) 363. In other words, the jury is not required to equate the negligent lookout of one participant with the negligent lookout of the other." [7]

---

[6] *Hansberry v. Dunn* (1939), 230 Wis. 626, 633, 284 N. W. 556.
[7] *Winkler v. State Farm Mut. Automobile Ins. Co.* (1960), 11 Wis. (2d) 170, 175, 105 N. W. (2d) 302.

In *Froemming v. Amity Leather Products Co.* (1956), 274 Wis. 181, 80 N. W. (2d) 228, the jury found both drivers negligent with respect to management and control and being on the wrong side of the highway. The jury apportioned negligence, 48 per cent to the plaintiff and 52 per cent to defendant's driver. It was held that under the circumstances, the jury could properly conclude that the latter's negligence exceeded the negligence of the plaintiff.

In *Evjen v. Packer City Transit Line* (1960), 9 Wis. (2d) 153, 100 N. W. (2d) 580, there was a head-on collision and virtually no evidence except the position and condition of the vehicles after the collision. The jury found each driver negligent in failing to give the other one half of the highway and apportioned 90 per cent to one and 10 per cent to the other. The verdict was approved in this court.

It is clear from the statement of facts that as this case was about to go to the jury, the court could not find, as a matter of law, that 50 per cent or more of the negligence was attributable to Mrs. Nichols. Her testimony and that of her passengers would have sustained a finding that Ebert was entirely at fault. Assuming, however, as found by the jury, that each driver fell below the standard of ordinary care with respect to lookout and with respect to driving on the right half of the roadway, it does not follow, as a matter of law, that each fell short of the standard in the same degree, or that the failure of each contributed equally to the accident. A jury satisfied that both were not as attentive to their positions on the highway and to observing each other as they should have been and that each invaded the other's lane could also reasonably attribute more of the causal negligence to Ebert than to Mrs. Nichols. It was dark and vision was also impaired by rain. There was evidence from which it could be inferred that Ebert and the unidentified car were both traveling with their left wheels to the left of the center

line; that Ebert was more attentive to following the unidentified car than to making an independent judgment of his own position on the highway; and that Mrs. Nichols' invasion of the eastbound lane was momentary as a result of swerving too far to her left in her attempt to get the Strupp car entirely onto the pavement after being forced part way onto the shoulder by the unidentified car.

We conclude that if all the answers had been agreed to by the same 10 jurors, the finding as to comparison should have been sustained and would have supported a judgment for plaintiffs. The verdict having been defective, however, there must be a new trial.

3. *Agency.* The jury found that Mrs. Nichols was not driving as Strupp's agent. The circuit court changed this answer. We agree.

Strupp's ownership of the car raised a rebuttable presumption that Mrs. Nichols was driving as his agent.[8] Was there any evidence inconsistent with the existence of an agency relationship?

The facts relevant to this branch of the case may be summarized as follows: At the time of the collision, Mrs. Nichols, age eighteen, and not then married, was keeping company with Jerry Sundalius. Strupp was Sundalius' supervisor at the shop in Milwaukee where both were employed, and they had become friends. They had gone to various places together before the day of the accident, and Mrs. Nichols had accompanied them at times. She had driven the Strupp car on two or more of the previous occasions.

On the day in question, Strupp suggested to Sundalius that they go to a dance at Elkhorn. They arranged to meet at a street corner in Milwaukee. Strupp reached the meeting place in his own car, and Sundalius and Mrs. Nichols ar-

---

[8] *Edwards v. Gross* (1958), 4 Wis.. (2d) 90, 95, 90 N. W. (2d) 142.

rived in Mrs. Nichols' car. Strupp's car was a better one, was well supplied with gasoline, and Strupp suggested that they use it. Mrs. Nichols apparently desired to acquire more driving experience than she already had, and asked Strupp if she could drive. Strupp consented. Mrs. Nichols asked which way they were to go, and Strupp told her. A few miles before the place of collision, it began to rain, and it got dark. Strupp then suggested to Mrs. Nichols that she turn on the lights. She did so. When Mrs. Nichols veered to the right and partly off the pavement just before the collision, Strupp told her that she had better get back on the roadway.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." [9]

In a comment to the foregoing statement, it is said:

"The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control."

It is undisputed that the trip was for the benefit of all three, including Strupp.

What evidence is there that Strupp and Mrs. Nichols did not contemplate that Strupp would have the right to control Mrs. Nichols' operation of the car? We can find none. Strupp and Mrs. Nichols did not, of course, make any statements to each other as to the right of control. They probably gave it no conscious thought. It would be most unusual in this type of situation if they did.

---

[9] Restatement, 1 Agency (2d), p. 7, sec. 1 (1).

"That the driver of an automobile is equally interested with another in a particular trip does not prevent him from being the agent of the other. *Gehloff v. Kandler,* 204 Wis. 464, 234 N. W. 717. The plaintiff as the owner of the car had the right to control the actions of the driver in driving it on the trip, whether she had occasion to exercise it or not." [10]

"The owner of a car arranging for its being driven for her benefit is responsible for damage done by a driver secured by her unless there exists an arrangement which divests the owner of control and leaves the owner a mere passenger." [11]

Unless the social character of the purpose of the trip, or the fact that Mrs. Nichols wanted to drive and asked for permission would be evidence tending to prove an arrangement other than agency, the presumption of the existence of an agency relationship must control. In our opinion, neither of the facts mentioned tends to rebut the existence of any element of an agency relationship.

It follows that if, upon a new trial, Mrs. Nichols is found to have been causally negligent, her negligence is to be imputed to Strupp. There is no need for a new trial on the issue of agency.

4. *Damages.* On motions after verdict, defendants attacked the damage awards in the action for personal injuries as excessive. Because of the disposition of the case made by the circuit court, we do not have the benefit of the circuit court's approval or disapproval of the amounts awarded, nor has the question been argued in this court. The awards were not large, and may have been sustained by the evidence. Proof of damages at the new trial would consume time and cause expense. We leave it to the discretion of the circuit

[10] *Schmidt v. Leary* (1934), 213 Wis. 587, 590, 252 N. W. 151.
[11] *Gehloff v. Kandler* (1931), 204 Wis. 464, 465, 234 N. W. 717.

court upon remand to decide whether the new trial should be limited to issues other than damages.[12]

The judgment in the action brought by Strupp and Mrs. Nichols dismissed a cross complaint of defendants against an impleaded defendant insurance company. There was no appeal from that portion of the judgment.

*By the Court.*—The portions of the judgments appealed from are reversed, and the causes are remanded for further proceedings not inconsistent with the opinion on file herein.

[12] See *Korpela v. Redlin* (1958), 3 Wis. (2d) 591, 597, 89 N. W. (2d) 305.