JENSEN, Appellant, v. RURAL MUTUAL INSURANCE
COMPANY, Respondent.

*No. 128. Argued November 25, 1968.—Decided December 20, 1968.*
(Also reported in 163 N. W. 2d 158.)

For the appellant there was a brief by *Conway & Conway* of Baraboo, and oral argument by *Vaughn S. Conway*.

For the respondent there was a brief by *Thomas W. Pierce* and *Riley, Pierce & Lynch,* all of Madison, and oral argument by *Thomas W. Pierce.*

WILKIE, J. Four issues of descending importance are raised on this appeal. They are:

(1) Whether there is any credible evidence to support the jury finding that plaintiff was causally negligent.

(2) Whether there is ample credible evidence to support the jury finding that the causal negligence of plaintiff was greater than that of defendant's insured.

(3) Whether the damage award of $8,000 for permanent back injuries was inadequate.

(4) Whether plaintiff is entitled to a new trial in the interest of justice.

*Plaintiff's Negligence.*

The rule is well settled that the jury verdict must stand if there is any credible evidence which, under any reasonable view, supports that verdict.[1] It is appellant's contention that respondent's insurance company has failed to meet its burden of proof on the issue of contributory negligence. Thus it is the duty of this court to examine the record to determine if any credible evidence exists that will support a jury finding of contributory negligence. If such evidence exists the finding must stand.

Plaintiff Jensen testified at the trial that he was driving in the middle of the road until he neared the curve, at which time he claims he was "way over on the right

---

[1] *Altiere v. Bremer* (1968), 39 Wis. 2d 548, 159 N. W. 2d 664; *Nieman v. American Family Mut. Ins. Co.* (1968), 38 Wis. 2d 62, 155 N. W. 2d 809.

side." This testimony was confirmed by plaintiff's wife, who also testified that as they approached the curve "He got over onto the right-hand side of the road as far as he could get against the snowbank . . . ." The plaintiff's wife further testified that:

". . . just as we were approaching this curve I had just said to my husband, 'I hope no one comes around this corner,' and just as I said it we were hit."

Plaintiff testified that he never got to the curve because "As we were getting near the curve another car came around the corner and that quick, 'Bang,' we had it."

Therefore, according to the testimony of plaintiff and his wife, the plaintiff pulled over to the right side of the road before they reached the curve; the plaintiff's wife made the above-quoted statement (at the same moment they were hit) to the plaintiff before they reached the curve; and the accident itself occurred before they reached the curve.

However, an examination of the photographic exhibits in the record reveals that the accident occurred well into the curve. Therefore, it appears that the jury could legitimately infer that plaintiff and his wife were mistaken as to the point of collision, and could therefore further infer that they were also confused as to the precise point that plaintiff pulled over to the right side of the road. Thus the jury could have concluded that at the moment of impact the plaintiff had not yet reached the right side of the road and was still at least partially in the left-hand lane at the moment of impact. This is particularly so in view of the testimony of Paul Billman, defendant's insured, that plaintiff's car was "coming on the inside of the curve."

Officer Klipp of the Sauk county traffic police was called to the accident scene and made observations, measurements and photographs. He testified that he observed tracks behind plaintiff's car that impressed him

as being fresher than most of the tracks on the road. When asked how he could tell if they were fresher he answered:

"It's easy to determine if you look at the photographs, 16, or 14, or 14A. There are no other wheel tracks that cut over the top of this set of tracks that go to the rear of the accident."

The photographs also establish that due to the position of the two automobiles as they came to rest following the collision, no other vehicles could have passed over the portion of the roadway where the telltale tire marks were observed.

At a point somewhere west of the two vehicles, Officer Klipp measured the width of the travelable portion of the roadway and found it to be 18 feet. The tire marks that he observed as fresher than the others ran diagonally from north to south, cutting across all other tracks in the road. He testified that at a point 50 feet from the rear of plaintiff's automobile the left wheel track was five feet from the north edge (plaintiff's left-hand side) of the travelable portion of the highway, or about four feet north of the center of the highway. To the east, at a point near the rear of the plaintiff's automobile, the left wheel track was seven feet from the north edge of the travelable portion of the highway (still two feet north of the center of the highway). Klipp testified that the right wheel track ran parallel to the left wheel track and stopped at the left rear wheel of the Jensen car. There were skid marks under plaintiff's car indicating that the car had moved to the right (south) on impact. Klipp also testified that immediately adjacent to the plowed-out snowpile along the south side of the road to the rear of the plaintiff's car there were no tracks in the snow.

Officer Klipp did not measure the width of the tracks left in the snow, nor did he measure the width of the plaintiff's automobile. He also did not know whether

the marked tracks were the same width as the tires on Jensen's 1951 Ford. Thus appellant contends that any testimony linking the tire tracks in question to the plaintiff's automobile is completely discredited. The implication of appellant's argument seems to be that if the above measurements were not made, the jury could not have legitimately inferred that the described left and right tracks were made by the plaintiff's car.

However, this is not necessarily so. As observed, because the two automobiles involved in the accident blocked the roadway and prevented any other vehicles from passing, the jury could conclude that the freshest tracks were made by the plaintiff's car.

Without further discussing other evidence in the record, it clearly appears that there is credible evidence to support a jury finding of contributory negligence.

### Extent of Plaintiff's Negligence.

It is impossible for this court in this case to determine if the jury found plaintiff and defendant guilty of the same kind and character of negligence. The special verdict does not identify the type(s) of negligence found by the jury. Although the jury was appropriately instructed as to speed, management and control and failure to yield half of the roadway, the verdict in ultimate fact form did not specify type(s) of negligence.

Then, too, even if the jury did find both drivers negligent in failing to yield half of the roadway, this court in *Strupp v. Farmers Mut. Automobile Ins. Co.*,[2] quoting from *Hansberry v. Dunn*,[3] stated what has become a well-established rule:

" '. . . We are satisfied . . . that the court may not adopt a rule of thumb that will check off automatically

---

[2] (1961), 14 Wis. 2d 158, 109 N. W. 2d 660.

[3] (1939), 230 Wis. 626, 633, 284 N. W. 556.

lookout against lookout, control against control, etc., holding these items equal as a matter of law in every case.' " [4]

Further in that opinion, quoting from *Winkler v. State Farm Mut. Automobile Ins. Co.,*[5] the court stated:

" 'This court in recent years has declared many times that the jury in comparing negligence is not required to attribute the same percentage of negligence to the two participants of a motor vehicle accident merely because they are each guilty of the same category of negligence. [Cases cited.] In other words, the jury is not required to equate the negligent lookout of one participant with the negligent lookout of the other.' " [6]

In *Grana v. Summerford,*[7] this court stated:

"The comparison of negligence is determined not by the kind or character or the number of respects of causal negligence but upon the degree of the contribution to the total of such negligence to the occurrence of the accident attributable to the persons involved."

The quality of the evidence placing the plaintiff's automobile north (or to the left) of the center of the road and the testimony of plaintiff and his wife that they were traveling in the middle of the road as they approached the curve would be sufficient to permit the verdict rendered by the jury to stand, attributing 60 percent of the causal negligence to the plaintiff.

In any event, we cannot say, as the plaintiff asks us to, that as a matter of law the negligence of the defendant was greater than that of the plaintiff.

### Damages.

Unless the size of the $8,000 award to the plaintiff indicates that the jury was prejudiced against him and

[4] *Strupp, supra,* footnote 2, at page 164.
[5] (1960), 11 Wis. 2d 170, 175, 105 N. W. 2d 302.
[6] *Strupp, supra,* footnote 2, at page 164.
[7] (1961), 12 Wis. 2d 517, 521, 107 N. W. 2d 463.

rendered a perverse verdict, this court's determination that such award was inadequate would be unavailing. Our review of the damages reveals that for a couple of weeks following the accident plaintiff was treated only for a nose injury. He was never hospitalized and never again consulted a doctor until he was examined nearly eight years later by the doctor who testified at the trial. Most of the doctor's testimony concerned an alleged but disputed back injury suffered by plaintiff in this accident. Under these circumstances the jury's award of $8,000 was neither inadequate nor indicative of any perversity toward the plaintiff.

*No New Trial in the Interest of Justice.*

Appellant relies on *Mainz v. Lund* [8] to support his contention that this court should grant a new trial in the interest of justice, under sec. 251.09, Stats. In *Mainz v. Lund* we ordered a new trial in the interest of justice because we deemed there had been a miscarriage of justice by a jury failing to find a defendant driver negligent and because of the very low award for damages in the face of medical testimony that the injuries to a four-and-one-half-year old child were severe and left many serious permanent residuals. There has been no such miscarriage of justice here and accordingly appellant's request for a new trial is denied.

*By the Court.*—Judgment affirmed.

[8] (1963), 18 Wis. 2d 633, 119 N. W. 2d 334.