SWANSON, Administrator, Respondent, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

*May 7—June 2, 1953.*

276

For the appellant there was a brief by *Wilcox & Sullivan* of Eau Claire, and oral argument by *Francis J. Wilcox*.

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *Warren P. Knowles III*.

MARTIN, J.   Three questions are raised on this appeal: (1) Whether under sec. 331.04, Stats., the personal representative may bring an action in behalf of the relatives for

damages due to wrongful death; (2) whether the negligence of the deceased was, as a matter of law, at least as great as that of the two drivers; (3) whether the evidence supports the finding of pecuniary loss to the children of the deceased.

We do not consider that the plaintiff's action is barred by sec. 331.04, Stats., which provides in part:

"(1) An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs. . . .

"(3) If separate actions are brought for the same wrongful death, they shall be consolidated on motion of any party. Unless such consolidation is so effected that a single judgment within the limits hereinafter provided may be entered protecting the defendant or defendants and so that satisfaction of such judgment shall extinguish all liability for the wrongful death, no action shall be permitted to proceed except that of the personal representative."

For many years the right to prosecute wrongful-death actions was vested only in the personal representative, except where no survival action existed in favor of the estate, in which case the action could be maintained by the beneficiaries. After amendment the statute now provides that such an action may be commenced by either the personal representative or the beneficiaries, or both, but that separate actions for the same death shall be consolidated so that satisfaction of a single judgment shall extinguish all liability therefor. The purpose of the amendment is plain. It alleviates the hardships that were frequently suffered by beneficiaries under the old procedure and it avoids a multiplicity of suits which might be brought. Defendant contends, however, that where only an estate action is commenced there is no protection for the defendant against actions by beneficiaries and that the judgment will not be binding upon them since they are not parties.

Sec. 331.04, Stats., further provides:

"(6) Where the wrongful death of a person creates a cause of action in favor of the decedent's estate and also a

cause of action in favor of a spouse or relatives as provided in this section, such spouse or relatives may waive and satisfy the estate's cause of action in connection with or as part of a settlement and discharge of the cause of action of the spouse or relatives."

The plaintiff here testified that before bringing the action he was authorized to do so by all of the children except one. Since that one had filed no claim against defendant by the time of trial, which was in April of 1952, he is now barred from starting an action. The question is therefore moot.

Defendant also contends that the deceased should be found, as a matter of law, guilty of negligence at least equal to that of the two drivers. We are of the opinion that on the basis of the entire record, from which we have set out the testimony in some detail above, the comparison of negligence was for the jury. *Grohusky v. Ferry* (1947), 251 Wis. 569, 30 N. W. (2d) 205; *Johnson v. Viebrock* (1953), 263 Wis. 284, 57 N. W. (2d) 337. There was testimony from which the jury could conclude that Hanson had cleared at least half of the roadway and was behind the Falteisek car when he was struck.

The third contention of the defendant is that decedent's children have suffered no pecuniary loss by reason of the death. It is true that Hanson was an elderly man, retired, and living with his children. The evidence shows that when any of the children were ill or otherwise in need of financial help, he loaned money to them; he was a kind man and looked after all his children when they were in trouble or need. While there was no evidence of the reasonable value of his earning power, it was shown that he was a healthy, robust man who actively participated in the operations on his son's farm every day. He wanted no pay except room and board. From the evidence the jury could well have concluded that as an experienced farmer, actively engaged in helping his son with the work, and interested in the welfare of the owner

of the farm, his services were of a greater value to his son than those of a hired hand.

" 'The personal services of a skilled farmer are worth more than the mere manual labor he may perform. His judgment, skill, and experience, gained by a long life of successful toil, should be also considered, and none are better qualified to give such an estimate than those who know him, and are themselves farmers of character and experience.' . . . It has been held that it is not essential to a recovery that evidence be offered of the pecuniary value of the services performed by the deceased or of the profits which he derived from his business, the other facts enumerated being shown, and, in addition, the age, sex, circumstances, and condition in life of the next of kin. But in the absence of proof showing the earning power or habits of industry of the deceased it is error to charge that the pecuniary loss may be estimated from his age, health, and habits. . . .

"The evidence of pecuniary injury need not be very strong in order that the case may go to the jury except as to damages made up of actual disbursements; . . . A reasonable probability of pecuniary benefit is all that is required." 5 Sutherland, Damages (4th ed.), pp. 4910, 4911, sec. 1268.

In *Boyle v. Larzelere* (1944), 245 Wis. 152, 155, 13 N. W. (2d) 528, this court said:

"These cases are clearly cases in which a verdict by the jury upon the amount of pecuniary loss of the parents must be sustained if there is credible evidence to sustain it; even though the finding of the jury on the matter of pecuniary damages was against the great weight and clear preponderance of the evidence, that does not warrant the trial court in setting it aside for any purpose other than granting a new trial. There are numerous cases holding that where there is credible evidence to sustain the verdict of the jury, it must stand."

This rule was already well established in 1886 where, in *Schrier v. Milwaukee, Lake Shore & Western R. Co.* (1886), 65 Wis. 457, 462, 27 N. W. 167, this court considered a

verdict of $2,000 for the death of the plaintiff's eighteen-month-old son:

"As this court has often said, the statute gives the jury a wide scope in awarding damages within a specified limit. The jury may give such damages 'as they shall deem fair and just' with reference to the pecuniary injury resulting to the relatives named from the death of the person killed. Under our decisions upon this statute, we do not feel justified in granting a new trial in this case because of excessive damages. We shall not go over our decisions upon this subject. Suffice it to say that intelligent and honest jurors will reach different results in this class of cases; and, unless the damages given are so large as to indicate some bias or perversion of judgment on the part of the jury, we are unwilling to grant new trials on that ground."

The determination of the amount of damages was for the jury upon the evidence presented; and while the amount awarded may appear generous, it is not so excessive as to indicate that the verdict is the result of passion and prejudice on the part of the jury.

Defendant further asserts that the trial court erred in allowing the eyewitness Johnson to testify as to his opinion of Thom's speed; in instructing the jury with regard to Thom's duty as to speed in connection with the question of his management and control; and in refusing to give an instruction with respect to the emergency doctrine. No question was submitted as to speed and the admission of Johnson's testimony was in no way prejudicial.

We cannot agree that the court should have instructed the jury on the emergency doctrine. The evidence showed that Falteisek had traveled the same way as Thom and had stopped without apparent difficulty. Thom had driven up the hill earlier that morning and had no trouble going up the hill. Fred Thom saw the Falteisek car when it was stopped approximately 150 feet ahead; he said his own car did not

slue. Under these circumstances, since the driver of the Thom car did not testify, it would be pure speculation to assume that he was presented with an emergency.

In our opinion the case was fully and fairly tried and the verdict appears to be the result of careful weighing of the evidence and impartial judgment on the part of the jury.

*By the Court.*—Judgment affirmed.