Van Matre, by Guardian *ad litem,* and another, Respondents, vs. Milwaukee Electric Railway & Transport Company, Appellant.

*December 7, 1954—January 11, 1955.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen,* attorneys, and *John F. Zimmermann* of counsel, all of Milwaukee, and oral argument by *Mr. Zimmermann.*

For the respondents there was a brief by *Kleczka & Steinhilber* of Milwaukee, and oral argument by, *Leonard J. Kleczka* and *C. D. Steinhilber.*

GEHL, J. Question 1 of the special verdict inquired whether the injuries resulted from an unavoidable accident. The jury answered in the negative. The court instructed the jury that the burden of proof to establish an affirmative answer to the question was upon the defendant. Defendant contends that the burden was erroneously placed. We have found but one Wisconsin case which may be considered as dealing with the question as to who has the burden to prove unavoidable accident when it is in issue. In *Murray v. Yellow Cab Co.* (1923), 180 Wis. 314, 192 N. W. 1021, a negli-

gence case, the court refused to submit to the jury a question inquiring whether plaintiff was injured as the result of a mere accident. In its instructions dealing with the question of defendant's negligence the court did, however, charge that to answer those questions against defendant the jury must be satisfied that the collision was not the result of an unavoidable accident and that the burden of proof to establish that it was not was upon the plaintiff. The instruction was not attacked and the court, without any discussion and apparently without considering that it had been called upon to decide the precise question, found no fault with it. If the decision may be considered as authority for the proposition that the burden of proof to establish the negative is upon the plaintiff it accords with the view of a number of decisions of other jurisdictions. *Hardman v. Younkers* (1942), 15 Wash. (2d) 483, 131 Pac. (2d) 177, 151 A. L. R. 868; *El Paso Electric Co. v. Hedrick* (Tex. Civ. App. 1931), 39 S. W. (2d) 128; *Jolley v. Clemens* (1938), 28 Cal. App. (2d) 55, 82 Pac. (2d) 51; *Polk v. Los Angeles* (Cal. App. 1944), 150 Pac. (2d) 520, 26 Cal. (2d) 519, 159 Pac. (2d) 931. In some of these cases it has been held that the burden is not shifted even when unavoidable accident is pleaded as a defense.

To entitle a plaintiff to recover in a negligence case he is required to show that defendant was negligent and that the negligence was the proximate cause of the injury complained of. If the injury resulted from an unavoidable accident that is the same thing as to say that neither party was negligent. We conclude that the court erred in its charge.

We are of the opinion, however, that defendant was not prejudiced by the court's error. By its answers to questions (2) and (3) of the verdict the jury found defendant guilty of causal negligence. The court had rightly charged that the burden of proof as to these questions was upon the plaintiff. The answers to the questions were not inconsistent with the

jury's finding that the injuries did not result from an unavoidable accident. The answer to question (1) is not needed to support the judgment and is superfluous. *Krantz v. Krantz* (1933), 211 Wis. 249, 248 N. W. 155.

We consider it advisable to call attention to the fact that when questions, inquiring as to the negligence of the parties involved in an automobile collision case, are put to the jury it is not ordinarily necessary to add a question inquiring as to whether the injuries resulted from an unavoidable accident. We believe that the foregoing demonstrates that such question is under the circumstances unnecessary and that it may result in confusion and inconsistency which, of course, could be of no help to either of the parties. There may be negligence cases when the inclusion of such a question would be advisable but we are of the opinion that such cases would be rare.

It is contended that there is no credible evidence in the record to support the jury's finding that defendant's operator was negligent with respect to speed and the control of the bus.

Defendant urges that the sole cause of the collision was the slippery condition of the roadway and the resultant skid of the bus. It is true, as defendant contends, that skidding on a slippery pavement is not necessarily due to negligence but the inquiry goes further than to determine whether skidding occurred. The speed of the vehicle prior to or at the time of the skidding or the manner in which the car is controlled even after the skidding has commenced are factors to be considered in determining whether there has been negligence.

". . . the fact that the skidding of an automobile, considered by itself as an isolated factor unrelated to surrounding circumstances, is not evidence of negligence, does not mean that skidding always constitutes a defense to other proven acts of negligence." 5 Am. Jur., Automobiles (1954 Supp. p. 118), p. 654, sec. 273.

From a point at least 500 feet south there was a slight downgrade toward the intersection of the two streets. The entire road surface was slippery with ice. There was testimony that as the bus approached the intersection it was traveling "rather rapidly," 25 miles per hour, and that such speed had continued during at least the last 250 feet of its travel to the point of impact; that its speed was not reduced in that distance. The bus operator testified that he was twenty-one minutes behind schedule. Probably the most significant testimony supporting the finding that he was negligent with respect to speed was his reply to a question why he did not shift gears earlier than he did as he approached the intersection. His answer was: "For the simple reason that I realized that my bus was traveling a little faster than I should on that slippery road." It does not appear that the bus was being operated in excess of the speed fixed by statute or ordinance as the legal limit. That does not mean, however, that one who drives at less than the permitted speed is exonerated from negligence as a matter of law. *Reynolds v. Madison Bus Co.* (1947), 250 Wis. 294, 26 N. W. (2d) 653. The jury had the right to infer that the bus operator was negligent in approaching a place at which he was required to stop his bus on an icy street at the rate of 25 miles per hour. *Lang v. Baumann* (1933), 213 Wis. 258, 251 N. W. 461.

We are of the opinion also that there is support for the jury's finding that the operator was negligent with respect to management and control. He saw the people waiting to board the bus when he was at least 500 feet from the intersection; he did not blow his horn at any time; he did not shift gears so as to be better able to control the bus until he was 20 feet from the people at the curb; he lost control of the bus when he applied his brakes and shifted into low gear. He testified that he double-clutched; and that that is the general procedure that you take to slow down your motor on

slippery roads; he found out that that was an erroneous procedure in this case "through the inexperience of not going on them kind of roads. I wouldn't say insufficient experience." He testified also that if he had followed the course of another bus which arrived at the scene after the accident and had traveled "more toward the center" he would not have had the accident. It is clear that these circumstances admit of an inference for the contention of plaintiff that the operator was negligent with respect to the manner in which he controlled the bus.

Defendant contends that plaintiff should have been found guilty of contributory negligence as a matter of law, particularly that she was negligent in standing where she did to await the bus. She testified that she and most of the people standing at the corner were north of the telephone pole to which was attached the bus-stop sign; she stood upon the five-foot-wide gravel shoulder between the black-top pavement and the snowbank, not more than a foot from the snowbank; when she first saw the bus she was three or four feet north of the bus-stop pole and about five feet east of the black-top; when the bus reached a point about 20 feet from her its course was changed to the northeast; she took a couple of steps to the north but could proceed no farther because the other people were in her way; she then tried to scale a snowbank and the bus knocked her down. Her testimony that she was struck by the bus as she was attempting to avoid injury by climbing the snowbank is verified by the witness, Schueler, who also stood at the corner waiting to board the bus. We are unable to say as a matter of law that she was negligent in standing where she did, and certainly we may not say so in view of the fact that at the moment she became aware of the danger she made an effort to get out of the way of the bus.

It is contended that the court erred in permitting a witness who was at the scene of the accident awaiting the arrival of

the bus to testify that in her opinion the place where the plaintiff stood was safe. We do not consider the testimony of the witness as stating her then existing opinion as to the character of the ground. She was asked:

"*Q*. But the gravel part of the roadway that you are talking about, that was in the nature of a shoulder, to the east and to the west of the black-top, is that right? *A*. Yes.

"*Q*. And that you considered as a safety lane? *A*. Yes."

It will be seen that she did not testify that in her opinion the place was safe; her testimony must be construed as meaning that at the time she stood there she considered the area as a safety lane. When she referred to the area as a safety lane the jury might well have understood her to mean that the area was intended for occupancy by prospective passengers as is a safety island many times found at corners and adjacent to streetcar tracks.

Defendant contends that the award of $15,000 to plaintiff for damages for pain and suffering and permanent injury is excessive. Dr. Charles Stern was called to treat plaintiff on the day of the accident. He found a posterior dislocation of the right head of the femur, injury to the soft tissue in the right hip and right buttock, multiple contusions and abrasions and shock; he testified that a dislocation of the hip is a rare and very serious condition. Great force was required to produce the dislocation; in that process the lining of the cup into which the femur fits, the many blood vessels and nerves in the lining, and a cord which holds the femur in the cup was torn and the nutrition or substance which helps feed the blood to the bone is injured and destroyed; two operations were performed by Drs. Stern and Sadoff, the latter an orthopedic specialist; the two operations were required in an effort to bring the head of the femur back into the cup; at the second attempt they were able to bring the elements together; her legs were tied together and left in that position from ten to fourteen days; considerable damage had been

done to the muscles of one of the hips; the joint of which the doctor was speaking is called a "ball-and-socket joint" and is one of the strongest ball-and-socket joints in the body; its rupture in an adult person is rare; plaintiff complained of severe pain in her right hip, the back of her neck, and her chest; her head had been struck; she had bruises all over her body; she was given narcotics for pain; she was unable to pass urine; pain in her abdomen was relieved by what the doctor described as a "rectal;" following surgery a tube was placed in her bladder; on March 4th she still complained of pain; the bandages on her legs were removed and she was placed on crutches; on March 18th she was released from the hospital; she was totally disabled until April 30th.

Dr. Stern examined plaintiff on November 19, 1951, when he found her general condition good but she still complained of pain in her right leg and back; on May 21, 1953, he found that she walked with a limp; she complained of pain, headaches, and dizziness; rotation of her right leg caused pain in her right hip; her condition three years after the accident indicated to him that there are still some pathological processes in her right hip; her right leg appears somewhat shorter than the left.

Dr. Sadoff confirmed the testimony of Dr. Stern and added that plaintiff's injuries require observation for at least five years; observation is required because of the possibility that the thigh bone may become lifeless; "she has the symptoms and the findings which may lead to that;" on November 24, 1953, the date of his most recent examination, he found that she was "disabled to a degree of 10 per cent in her capacity to perform in the activity of the right lower limb at the hip."

Plaintiff testified that she suffered extreme pain immediately after the accident and that the pain continued while she was in traction; that she had headaches and her right forearm was numb until about a month after the accident. She still

suffered pain at the time of the trial; during the three months preceding the trial the pain had been increasing. She has been forced to give up a number of physical activities which she enjoyed before the accident.

The award is not so high as to indicate perverseness upon the part of the jury. Furthermore, it does not appear that the jury disregarded the court's instructions and rendered a verdict which is clearly contrary to the evidence. We are unable to say that "the damages are beyond anything which a conscientious, properly instructed jury could allow upon the evidence in this case." *Timm v. Rahn* (1953), 265 Wis. 280, 287, 61 N. W. (2d) 322.

One Bragdon was a member of the jury. The verdict was returned on February 8, 1954. On February 15, 1954, there was called for trial in the civil court of Milwaukee county another action against the defendant in this case. Bragdon was one of the members of the jury panel. Apparently no record of the *voir dire* was made by the reporter. In an affidavit of one of the attorneys for the defendant it is recited that the attorney for the plaintiff in the action being tried in the civil court asked the panel whether any of them could not decide the issues in a fair and impartial manner. Bragdon raised his hand and he was asked why he thought that he could not fairly and impartially decide the case. It is recited further in the affidavit that he felt that one of his "buddies" had been in an accident in which the Transport Company was involved and in which he had received a "rough deal." Testimony was taken at the hearing upon defendant's motion made in the instant case for a reconsideration of the court's decision on motions after verdict. It would serve no good purpose to recite in any detail the testimony taken. It is enough to say that the examination of Bragdon and the answers made by him disclose ample support for the trial court's determination that it had not been shown that Bragdon had made any false statement as to his qualifications

when examined as a juror in the instant case, or that he was prejudiced for or against either party to this action. The evidence to impeach a verdict by attacking the fairness of a juror must be clear and satisfactory. *Cupps v. State* (1904), 120 Wis. 504, 97 N. W. 210, 98 N. W. 546. We may not disturb the trial court's ruling.

*By the Court.*—Judgment affirmed.

STEINLE, J., took no part.