TAYLOR, Respondent, vs. WESTERN CASUALTY & SURETY COMPANY and another, Appellants.*

*June 1—June 28, 1955.*

* Motion for rehearing denied, with $25 costs, on September 13, 1955.

For the appellants there was a brief by *Brazeau & Brazeau,* and oral argument by *Richard S. Brazeau* and *John A. Cole,* all of Wisconsin Rapids.

For the respondent there was a brief by *Reiland & Schmidt* of Wisconsin Rapids, and oral argument by *Donald E. Reiland.*

STEINLE, J.    Defendants contend that there is no testimony supporting the jury's findings of negligence on the part of Steinfeldt. The roadway was dry, the weather clear, and it was "quite light." Since we are unable to say that the plaintiff's story is incredible we may assume that the jury concluded, as they had the right to do, that when he alighted from the bus the rear end of the bus was near the north line of Highway D. He testified that as he stepped from the bus he looked to the north and saw a car which turned out to be that of Steinfeldt, about a mile down the road; that he walked south across "D" and then west across Highway 13, and that when he came toward the center line of Highway 13 he noticed the car again; it seemed to be about 400 yards down the road. He took several more steps and when he got about to the center line he stopped and "stood still and then, in that length of time, the car was right upon him," and he was struck.

Steinfeldt testified that he was traveling south on Highway 13 at the rate of speed of from 40 to 42 miles per hour. He testified that he did not see the plaintiff until he was 15 feet from him, despite the fact that he was able to see a boy standing near a filling-station pump at the southwest corner of the intersection when he struck the plaintiff.

He testified that conditions were such that he could see "more than 150 feet distinctly" which, of course, permitted the jury to infer that at and within that distance the plaintiff

might have been seen. One of plaintiff's witnesses testified that on a day and hour exactly one year later and under similar conditions of weather and light he made some observations at the intersection, and that from a distance of 250 feet north of the intersection he could see a person walking on and across Highway 13.

Steinfeldt testified that he had slowed down to about eight miles per hour and had practically stopped when his car struck the plaintiff. The jury had the right to infer from this testimony that, although he should have seen the plaintiff earlier, and in that respect was guilty of negligence as to lookout, and sufficient time had elapsed after he did see plaintiff to have permitted him to reduce his speed from 40 to 42 miles per hour to a practical stop, he should have done something more to avoid the collision. He testified that at no time did he turn to his right or left. He does not dispute the plaintiff's testimony that the latter had not crossed the center line of the road. Manifestly if he had made only a very slight turn to his right there would have been no collision.

There is ample support for the jury's findings of negligence on the part of Steinfeldt.

It is contended that the court erred in refusing to find that plaintiff's negligence was equal to or greater than that of Steinfeldt. A number of cases are cited by defendants in support of their contention. They are distinguishable in their facts. The apportionment of negligence is the peculiar province of the jury. The degree of negligence attributable to a party is not to be measured by the character thereof nor by the number of respects in which he is found to have been at fault. It is the conduct of the parties considered as a whole which should control. In other words, once it has been established that each has been negligent, it is then the jury's function to weigh their respective contributions to the result, which will, regardless of the nature of their acts or omissions, determine which made the larger contribution and to what

extent it exceeds or is less than that of the other. We may not say that the negligence of the plaintiff who testified that he stood at about the center of the road when he was struck is equal to or greater than that of the defendant who should have seen plaintiff some considerable time before he did, and who upon seeing him made as little effort as he testified he did to avoid the collision. *Grohusky v. Ferry* (1947), 251 Wis. 569, 30 N. W. (2d) 205; *Johnson v. Viebrock* (1953), 263 Wis. 284, 57 N. W. (2d) 337; *Swanson v. State Farm Mut. Automobile Ins. Co.* (1953), 264 Wis. 274, 58 N. W. (2d) 664.

The award of $14,000 for personal injuries is attacked as being excessive. The physician who attended the plaintiff testified that he found a comminuted fracture of the two bones in the lower right leg about halfway between the knee and ankle; bruises to his back, face, and shoulders; lacerations and scratches on his left leg; and a laceration on his right knee. He was placed in a cast and sent to the Great Lakes Naval Hospital. The doctor saw him again in June, 1954. He found that plaintiff's right leg is smaller in the upper thigh above the knee, calf, and foot than is his left leg. The second toe on his right foot was bent over at the top, making what is called a "hammertoe." There was a slight numbness in the middle of the leg at about the point of the fracture and also some loss of sensation to feeling when touched with a pin. The right foot at the instep is smaller than the left. There is a limitation of motion in the ankle joint. He has lost one half his motion in bending or twisting his foot. The right leg is one-half inch shorter than the left, a permanent condition. There is a 30 per cent disability in the lower leg.

The plaintiff was hospitalized from the date of the accident until May 7, 1954, and was unable to work until July 23, 1954. He limps when he walks and still suffers pain and he may have to undergo more operations. There are times when he has difficulty walking.

We are unable to say that "the damages are beyond anything which a conscientious, properly instructed jury could allow upon the evidence in this case." *Timm v. Rahn* (1953), 265 Wis. 280, 287, 61 N. W. (2d) 322; *Van Matre v. Milwaukee E. R. & T. Co.* (1955), 268 Wis. 399, 67 N. W. (2d) 831. Nor are we able to say that the award is so high as to indicate perverseness on the part of the jury.

*By the Court.*—Judgment affirmed.

FAIRCHILD, C. J. (*dissenting*). Where both the driver and the pedestrian, with equal opportunity to see, are assessed with failure to look out, it is difficult to understand the existence of a possibility of distributing the lookout responsibility between the parties on the basis of 65 per cent and 35 per cent. There may be circumstances where an opportunity for lookout is more favorable to one than to the other, but the specific findings in this case leave lookout on the part of one equal to the lookout on the part of the other. That situation should control the court in fixing the responsibility in the absence of some other element of negligence contributed by one or the other of the parties. The question of management and control was submitted to the jury, it appears to me, without full and complete instructions bearing upon those elements if they are to be added to appellant's failure to look out in a division of percentage of total negligence producing injuries to respondent. The evidence in the matter of management and control are of enough importance here to warrant granting a new trial.

The recognition of the elements that may constitute causal negligence in motor-vehicle-accident cases is set forth in *Reynolds v. Madison Bus Co.* 250 Wis. 294, 26 N. W. (2d) 653. A review of that doctrine may be outlined as follows: Negligence in the management and control of a motor vehicle on the part of the operator thereof does not arise until such operator has by his lookout perceived something of potential

danger that requires him to take some affirmative action on his part to avoid danger. If the threat of potential danger is the invading of his right of way, and he fails to see anything which indicates that this is about to happen until it is too late for him to apply his brakes and swerve his vehicle to be effective in avoiding a collision, he cannot be held guilty of negligence as to management and control. *Reynolds v. Madison Bus Co., supra; Weber v. Walters,* 268 Wis. 251, 67 N. W. (2d) 395; *Marchant v. Franz,* 259 Wis. 289, 48 N. W. (2d) 620.

The jury found that speed did not exist as a cause of the accident, and it did find that, in addition to failure to keep a proper lookout by the respondent, he failed in yielding the right of way. The appellant was where he had a right to be, and the jury were convinced that the respondent's failure in the matter of lookout and not yielding the right of way were causal. In ruling upon the motions after verdict with respect to the jury's finding of failure in the matter of management and control, the court suggested that the driver might have turned to the right. This does not follow unless the opportunity existed any more than that a duty rested on the respondent, who might have stopped or stepped back. The answer of the jury eliminating speed on the part of the appellant, and the fact that his car was so close to respondent when he first saw him that there is a serious question as to whether it was possible for him to have done anything that in the exercise of ordinary care he would be required to do, warrant the conclusion that unless the failures on the part of the respondent equal those on the part of the appellant there should be a new trial.