LOVESEE, Appellant, v. ALLIED DEVELOPMENT CORPORATION, Respondent.

No. 10. Argued November 25, 1969.—Decided January 9, 1970.
(Also reported in 173 N. W. 2d 196.)

For the appellant there were briefs by *Lawton & Cates* and *James A. Olson* and *Richard L. Cates*, all of Madison, and oral argument by *Mr. Olson*.

For the respondent there was a brief by *Petersen, Axley, Brynelson & Herrick*, and oral argument by *Eugene O. Gehl*, all of Madison.

HALLOWS, C. J.   In September, 1964, Allied was building a number of duplex homes in the city of Madison. It would construct the shell of a duplex, do some interior work, and subcontract the rest. The drywalling was subcontracted to the Madison Drywall Company, which employed Lovesee. Allied had placed a ladder in the open stairwell between the first floor and the basement of the duplex in which Lovesee was injured. The ladder was used as a temporary stairway by all employees working on the premises during the construction. On September 8, 1964, Lovesee, after finishing his work in the kitchen of the duplex, used the ladder to reach the base-

ment floor. He moved the ladder to the side of the stair-well and applied a piece of drywall material to the wall. He then put the ladder back and started to climb to the first floor; the ladder slipped and he fell sustaining his injuries. This action was commenced on the theory Allied violated the safe-place statute. Negligence was denied and contributory negligence of Lovesee was claimed.

Lovesee argues the trial court committed error: (1) In failing to instruct the jury that it should consider the different standards of care in answering the comparative negligence question; (2) in refusing to instruct concerning the provision of the administrative code and its applicability to Allied, and in instructing the jury it was the responsibility of Lovesee's employer to furnish an adequate ladder; and (3) the apportionment finding was disproportionate because of these errors and it was not supported by the evidence.

## I. *Instruction on comparison of negligence.*

The trial court in reference to the negligence question instructed the jury concerning the safe-place statute. But it is claimed that in reference to the question on comparative negligence the jury should have been instructed that in comparing the negligence it should consider that Allied was "required to act with a greater amount of care than is required of Mr. Lovesee under common law."

It is argued the jury in answering the comparative negligence question is called upon to weigh negligence, not causative effect, and consequently must consider the particular standard of care applicable to each party. The jury should consider the standard of care and does so in determining the contribution of the parties but the causative effect of the negligence is also an element of the consideration. It is true that sec. 895.045, Stats., says nothing about cause but this section has been construed from its beginning to apply only to causal negligence

and has been understood to require an evaluation and a comparison of the effect of the negligence to determine the relative percentage of contribution and to express such determination in percentage of the negligence of each party. *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 252 N. W. 721. Commonly this determination is expressed in percentage of negligence in order to express in layman's language the amount of fault or blame which should be ascribed to the tort-feasor. *Winkler v. State Farm Mut. Automobile Ins. Co.* (1960), 11 Wis. 2d 170, 105 N. W. 2d 302. In this process of apportionment the jury must consider the conduct of the parties as a whole and in doing so must consider the standard of care applicable to the acts or omissions constituting the tort-feasor's conduct, the nature and character of the conduct and its intensity, directness and remoteness, as a substantial factor in the chain of causation.

The trial court gave Wisconsin Jury Instruction, Civil, Part II, 1580,[1] in respect to the comparison-of-negligence question. The first sentence of this instruction tells the jury in layman's language that it is determining to what extent each party is to blame for the accident. The jury is then told to do this by weighing the respective contribution of each party's negligence to the accident and in this process to consider the conduct of the party as a whole. The argument of Lovesee is that the phrase "con-

[1] "By your answer to the comparative negligence question, you will determine how much or to what extent each party is to blame for the accident in question. You will weigh the respective contributions of these parties named in the question, considered as a whole, determined whether one made a larger contribution than the other and, if so, to what extent it exceeds that of the other. In making your apportionment of negligence, you will fix the percentage of negligence attributable to each person found causally negligent in proportion to how much the fault of each contributed to cause the accident and, by your answer to this question, record your determination."

sidered as a whole" is not sufficiently expressive to convey the idea that the jury should consider in this case the nature and character of the defendant's negligence in reference to the higher duty of the safe-place statute in contrast with the plaintiff's negligence under the lesser standard of ordinary care prescribed by common law. The majority of the court does not agree.

The phrase "considered as a whole," originally understood, meant that no one element or a combination of several elements of negligence or the number of respects in which a person is found negligent necessarily or solely determines or dictates a definite degree of contribution. At one time it was erroneously considered that if the negligence of the parties was identical in nature, then the contribution was equal. *Piesik v. Deuster* (1943), 243 Wis. 598, 605, 11 N. W. 2d 358. But this doctrine was repudiated in *Evjen v. Packer City Transit Line* (1960), 9 Wis. 2d 153, 100 N. W. 2d 580. We said in *Grana v. Summerford* (1961), 12 Wis. 2d 517, 526, 107 N. W. 2d 463, that a comparison of negligence is not determined by the kind or character or the number of elements of negligence but by the degree of contribution. *See also Van Wie v. Hill* (1961), 15 Wis. 2d 98, 105, 112 N. W. 2d 168. This language did not mean the nature or character or respects of the negligence did not bear a relationship to cause and, therefore, should not be considered in determining apportionment in terms of percentage of negligence. It meant there was no mathematical formula.

There is some language in *Taylor v. Western Casualty & Surety Co.* (1955), 270 Wis. 408, 71 N. W. 2d 363, which was originally considered as forbidding a consideration of the nature and the character of the acts or omissions by the jury in determining the respective contribution to the result. *See also Maus v. Cook* (1961), 15 Wis. 2d 203, 207, 112 N. W. 2d 589; *Mix v. Farmers Mut. Automobile Ins. Co.* (1959), 6 Wis. 2d 38, 42, 93

N. W. 2d 869. This limitation on the jury in determining the relative fault of each participant in terms of a comparison of negligence no longer represents the law and is not in the present standard instruction.

We conclude the jury did consider in the comparison question that Allied's action in furnishing the ladder was in violation of the safe-place statute. But it does not follow that the conduct of Allied, even though in violation of the safe-place statute, necessarily contributes more to the result than the contributory negligence of Lovesee. In *Presser v. Siesel Construction Co.* (1963), 19 Wis. 2d 54, 119 N. W. 2d 405, we stated that ordinary negligence could be compared with negligence founded upon the safe-place statute. This view was followed in *Bruss v. Milwaukee Sporting Goods Co.* (1967), 34 Wis. 2d 688, 150 N. W. 2d 337. The language in *Bruss* to the effect, "it is of no consequence whether the negligence was under the safe-place statute or common-law negligence" means only that such causal negligence can be compared, not that a violation of the safe-place statute always constitutes more negligence than any contributory negligence founded upon a common-law duty.

Lovesee relies on *Maus v. Bloss* (1954), 265 Wis. 627, 62 N. W. 2d 708, for the principle that a violation of the safe-place statute must necessarily contribute more to causation than common-law negligence. In that case the court sustained an apportionment where such result did occur. Any language of *Maus* which might be construed as supporting the proposition that in the comparison of negligence in a safe-place case the violation of the safe-place statute must be considered as contributing more than the common-law negligence to the injury is overruled.

Lovesee also argues the civil instruction 1580 is applicable only to cases involving the same standard of care and therefore a special mention should be given of the different standards of care as is done in cases involving

the negligence of an infant and an adult. It may appear illogical to emphasize the nature of the negligence of a minor [2] and deny such express mention in a safe-place case. However, the majority of the court believes it is not prejudicial error not to call attention to the different standards of care in a safe-place case when instruction number 1580 is used. The writer and Mr. Justice WILKIE believe the instruction is inadequate for a safe-place case and would enlarge the language "considered as a whole" to tell the jury it should consider the character and the nature of the acts and omissions and the standards of care, the remoteness of the effect and all other factors relevant to the comparison. A cross section of the community expected to give a commonsense appraisal of blame or fault should be given more instruction than to consider conduct "as a whole."

## II. *Instructions on the provisions of the Administrative Code.*

The Administrative Code, promulgated by Wisconsin department of industry, labor & human relations has specific provisions concerning safety requirements for the use of ladders as temporary stairways. If a ladder is so used and does not comply with the Administrative Code, the place is unsafe within the meaning of the safe-place statute. The ladder supplied by Allied did not comply because it was too short and was without safety shoes. Reasoning that Allied was in control of the premises and required to obey the code in respect to its employees, Lovesee requested the court to instruct the jury that Allied was required to comply with the code, *i.e.*, sec. IND

---

[2] *See Rasmussen v. Garthus* (1961), 12 Wis. 2d 203, 107 N. W. 2d 264; *Field v. Vinograd* (1960), 10 Wis. 2d 500, 103 N. W. 2d 671; *Bell v. Duesing* (1957), 275 Wis. 47, 80 N. W. 2d 821; *Metcalf v. Consolidated Badger Co-operative* (1965), 28 Wis. 2d 552, 137 N. W. 2d 457.

35.25 (6). However, the code sec. IND 35.01 places the responsibility for the provision and maintenance of the protection for workmen required under the code on the employee's immediate employer with an exception not pertinent to this case. Since Allied was not the immediate employer of Lovesee, the Administrative Code was not applicable to it so far as Lovesee was concerned and its control of the premises for this purpose was not relevant. The court did not commit error in failing to specifically instruct on the code. Nor do we find error because the instruction which was given stated the protection for workmen required under the regulations of the code rested with the employee's immediate employer. The giving of this instruction was a clarification because Lovesee adduced testimony of an expert concerning the safe use and safety features of ladders required by the code. The testimony relating to safety of ladders was proper on the general issue of whether the place was as safe as its nature would reasonably permit, but it was not necessary for this purpose to refer to the code. The jury did find Allied violated the general duty of making "the employment as safe as the nature of the place would reasonably permit." In so finding, the jury did take into consideration the nature of the ladder.

### III. *Apportionment of negligence.*

The apportionment of negligence is claimed by Lovesee to be totally disproportionate to the facts. The jury found Lovesee 80 percent causally negligent and Allied 20 percent. This is claimed to be disproportionate because of the errors in the instructions. Since we find no error, the basis for this argument does not exist.

But Lovesee also argues the apportionment is unsupported by the evidence because Allied was more negligent in placing the ladder in the stairwell for use than Lovesee was in using it. It is claimed the ladder was unsafe

because it was too short and was not equipped with safety shoes. Yet Lovesee used the ladder and placed it in the position it was when it slipped. Lovesee determined the angle at which the ladder was placed and how much of it would extend above the first floor. He also knew the condition of the surface of the floor and chose the place where the legs of the ladder rested. It was not the use of the ladder but the manner of its use by Lovesee which constituted his negligence. There were no hidden or latent defects in the ladder which caused it to slip and fall. A coemployee testified he finished the work left uncompleted by Lovesee and in doing so he had used the ladder to go from the basement to the kitchen three or four times and in order to do his work had moved and used the ladder in the area of the stairwell three or four times, all without an accident.

While we might not have found Lovesee 80 percent negligent if we were the jury, nevertheless to grant a new trial we would have to find as a matter of law that the negligence of Lovesee did not equal that of Allied. On the facts, we think Lovesee's negligence at least equaled that of Allied and, therefore, he is barred from recovery by his own negligence.

*By the Court.*—Judgment affirmed.