Osie COOK, Jr., and Lisa Cook,
Plaintiffs–Appellants,

v.

NAVISTAR INTERNATIONAL TRANS-
PORTATION CORP., and Mid–Century
Insurance Co., Defendants–Appellees.

Osie COOK, Jr., and Lisa
Cook, Plaintiffs,

v.

NAVISTAR INTERNATIONAL
TRANSPORTATION CORP.,
Defendant–Appellee,

and

Mid–Century Insurance Co.,
Defendant–Appellant.

Nos. 90–3093, 90–3433 and 90–3556.

United States Court of Appeals,
Seventh Circuit.

Argued May 9, 1991.

Decided Aug. 5, 1991.

As Amended Aug. 15, 1991.

Rehearing Denied Oct. 25, 1991.

Michael F. Hupy, argued, Jacobson & Hupy, Milwaukee, Wis., Judith M. Cannavo, Indianapolis, Ind., for Osie and Lisa Cook.

Mark A. Kircher, Frank J. Daily, argued, Quarles & Brady, Milwaukee, Wis., Michael R. Conner, Arend J. Abel, Barnes & Thornburg, Indianapolis, Ind., Timothy J. McDermott, Tripp, Scott, Conklin & Smith, Fort Lauderdale, Fla., Michael D. Flanagan, Whyte & Hirschboeck, Milwaukee, Wis., for Navistar Intern. Transp. Corp.

Jack M. Freedman, Barnes & Thornburg, Judith M. Cannavo, Indianapolis, Ind., Donald P. O'Meara, Mitchell, Baxter & Zieger, Milwaukee, Wis., for Mid–Century Ins. Co.

Before CUDAHY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

In July 1983, plaintiff Osie Cook, Jr.,[1] was driving a semi-trailer tractor designed and built by defendant Navistar[2] when the lights on the trailer began to flicker. Cook pulled the truck (a 1981 model 9670) to the side of the road in order to check the electrical connections behind the cab. As he attempted to mount the rear of the cab area, his foot slipped from one of the steps, and he injured his back.

Plaintiff brought a product liability suit in state court, alleging that Navistar caused his injury by negligently designing the steps and handles ("the climbing system") leading to the rear of the cab area, and failing to warn users about the proper way to access the rear of the cab area. Defendant removed the case to federal district court, where it was tried to a jury. After a two-week trial, the jury determined that although the defendant was 40% responsible for the injury due to its negligent design of the climbing system, the plaintiff was 60% responsible for his own injury. Under Wisconsin law, Cook was precluded

---

1. The use of "plaintiff" or "Cook" in this opinion refers to Osie Cook. Any reference to Lisa Cook (whose loss of consortium claim derived from her husband's personal injury claim), will be specified.

2. The term "defendant" in this opinion denotes Navistar. Reference to the other defendant in this case, Mid–Century Insurance (which issued worker's compensation insurance to Cook's employer, Schneider Transport), will be specified.

from recovering any damages for his injuries. Plaintiff now appeals the adverse verdict, claiming that the district court made several erroneous evidentiary rulings during the course of the trial.

## I.

The climbing system on defendant's model 9670 truck has three components: (1) a small oval fold-down step located on the side of the fuel tank; (2) a larger rectangular step on the top of the fuel tank; and (3) a vertical hand rail on the rear of the cab. Shortly before trial, defendant filed a motion in limine to exclude the introduction of a federal regulation governing climbing systems on trucks that became effective the year after Cook was injured. The regulations, found at 49 C.F.R. § 399, were designed to "enhance the safety of motor carrier employees" and applied to "all trucks and truck-tractors ... manufactured on or after September 1, 1982." 49 C.F.R. §§ 399.201 & 399.203. Had the regulations been in effect at the time Navistar manufactured the climbing system on Cook's truck in 1981, the system would have been unlawful. Fearing that introduction of the regulations would cause the jury to apply the regulations retroactively to the defendant, the trial court prohibited the plaintiff from introducing any evidence of the regulation's existence. The court excluded from its ban reference to any applicable regulations in existence at the time Navistar manufactured the model 9670 truck in question.

The defendant also moved to exclude reference to two other steps it experimented with on the model 9670: (1) a rectangular fold-down step it had used for a period of time prior to the accident in this case; and (2) a round fold-down step it installed after the accident. Navistar had designed and installed the rectangular step to meet the requirements of the pending section 399 regulations, but later determined that it was not a feasible replacement. Navistar discontinued use of the rectangular step and returned to the small oval step. Navistar argued, and the district court agreed, that reference to the rectangular step would require Navistar to introduce the section 399 regulations to explain why it changed the design of the step from the small oval step it had been using. The round step was also designed to meet the section 399 regulations and in fact came to replace the oval fold-down step in subsequently built 9670s. Reference to the round fold-down step was prohibited under the subsequent remedial measure provision of the Rules of Evidence. *See* Fed.R.Evid. 407.

At trial, Cook testified that he slipped when he had one foot on the oval fold-down step and one hand on the rail. As he was lifting himself up to place his free foot on the rectangular step, his foot slipped from the small oval step. He testified that he prevented himself from falling to the ground by hanging on to the rail with his hand, but that his lower body twisted as a result of the slip, and he injured his back. Cook also testified that Navistar had never instructed him how to access the rear of the cab. He admitted, however, that his employer had instructed him on the safe means of getting in and out of the cab and that he knew that using "three-point contact" was safer than the two-point contact he was using when the accident occurred. In the three-point contact method, three of the climber's four limbs are in contact with the system at all times—either two feet and one hand, or two hands and one foot. Cook admittedly had only two-point contact with the truck when the injury occurred—his right foot and his left hand.

Cook and his expert witness testified at trial that using three-point contact on the model 9670 truck was difficult, if not impossible, to accomplish because of its poor design. Plaintiff's expert testified that the climbing system appeared to be "tacked on" to the truck after the vehicle was designed and that the designers failed to integrate a safe climbing system into the truck's original design. He also testified that the oval step was too small and shallow to be used safely, and that the distance between the first and second step was too large. During the expert's testimony, plaintiff attempted to introduce a number of articles and studies to establish the ex-

tent of defendant's knowledge of design practices and standards in the industry. The defendant objected on several grounds (including hearsay, relevancy, and authenticity), and the district court ruled the evidence inadmissible.

Defendant countered plaintiff's case with evidence that a "fifth percentile female" [3] could maintain three-point contact with the climbing system on the 9670 at all times. Defendant also demonstrated that several different means of using the climbing system existed, implying that plaintiff's method was not the safest. In addition, evidence suggested that plaintiff told people after the accident that he slipped off of the larger top step, rather than the smaller bottom step. Finally, defendant introduced evidence that it had no notice of prior falls from the bottom step.

At the close of defendant's case, plaintiff attempted to introduce rebuttal evidence relating to Navistar's knowledge of prior accidents involving the oval fold-down step. Plaintiff sought to introduce the testimony of two witnesses who would have testified that they "had heard of others" falling from the oval step. The district court rejected the plaintiff's request, however, on grounds that plaintiff could have offered this evidence in his case-in-chief and thus the evidence was not "real rebuttal evidence."

## II.

■ Navistar first claims that we lack subject matter jurisdiction because plaintiff filed a defective notice of appeal. When plaintiff originally filed suit in this case in state court, state procedural rules required that, in addition to Navistar, Cook also name Mid–Century Insurance Co., which issued a worker's compensation policy to Cook's employer, Schneider Transport, in his suit. Cook did so, but Mid–Century was essentially uninvolved in the underlying product liability litigation. After the case was tried to the jury, the district court entered judgment on plaintiff's claim against Navistar, but failed to rule on the claim against Mid–Century. Plaintiff nonetheless filed a notice of appeal from the court's October 4, 1989 order (Appeal No. 90–3093). The district court's error was spotted in this court, and the case was dismissed as premature. Plaintiff returned to the district court and filed a motion for a revision of judgment. In response, the district court issued a Rule 54(b) judgment on the claim against Navistar on August 29, 1990, and held that it would enter final judgment against Mid–Century in seven days unless plaintiff objected. Since no objection was filed, the court entered an appropriate final judgment against Mid–Century on September 5, 1990. Mid–Century, however, sought clarification of this order, and the district court entered a modified final judgment with respect to Mid–Century's cross-claim on October 12, 1990. Mid–Century filed a notice of appeal identifying the October 12th revision as the judgment from which it sought to appeal (Appeal No. 90–3433).[4]

In his notice of appeal filed on November 8, 1990 (Appeal No. 90–3556), plaintiff claimed to be appealing "the final judgment" entered on "the 4th day of October, 1989, the revised Judgment of September 5, 1990 and the further revised Judgment of October 12, 1990." As Navistar notes, the plaintiff failed to identify the court's Rule 54(b) judgment of August 29, 1990, and it is clearly this judgment that the plaintiff seeks to have this court review. The October 4th "judgment" was invalid, and the other two identified judgments dealt solely with Mid–Century.

---

**3.** Testimony at trial revealed that product designers commonly design products for a population of users that varies from a "fifth percentile female" on one extreme to a "ninety-fifth percentile male" on the other. This means that the engineer designs the product so that it may safely be used by both a woman who is shorter than all but 5% of women generally, and a man who is taller than all but 5% of men generally. If the product can safely be used by both of these people, it is presumed that the general population can safely use it as well.

**4.** Mid–Century's claim on appeal turns solely on the possibility that we would reverse the jury's verdict; since we enter an affirmance in this case, we need not address the issues it raises.

Navistar relies on *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), to support its argument that this court lacks jurisdiction. In *Torres*, the Court held that an appellant's inadvertent failure to include his own name on a notice of appeal deprived the court of jurisdiction over the appeal under the provisions of Fed.R.App.P. 3(c). *Id.* at 314–16, 108 S.Ct. at 2407–08. Although *Torres* is somewhat analogous to the facts in this case, *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), is more precisely on point. In *Foman*, the appellant failed to specify the precise judgment being appealed; the Court did not hold that it lacked jurisdiction due to this error, but rather held that the defect could be overlooked so long as the faulty notice of appeal "did not mislead or prejudice the [appellee]." *Id.* at 181, 83 S.Ct. at 229. The Court concluded that since the appellant's "intention to seek review of [the unnamed judgment] . . . was manifest," the technicality could be disregarded. *Id.* We have followed *Foman* in numerous cases in this circuit, *see, e.g., Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d 48, 49 n. 1 (7th Cir.1989); *Cardoza v. Commodity Futures Trading Comm'n*, 768 F.2d 1542, 1546 (7th Cir. 1985), none of which Navistar cites or discusses. Navistar does not, nor could it, argue that it has been prejudiced by the defect in Cook's notice of appeal. Navistar briefed and argued the merits of the underlying judgment in this case, *cf. Foman*, 371 U.S. at 181, 83 S.Ct. at 229, knowing full well that Cook intended to appeal the adverse jury verdict. *Chaka v. Lane*, 894 F.2d 923 (7th Cir.1990), is not to the contrary. In *Chaka*, we held that "misspecification of the date of judgment in a notice of appeal affects this court's jurisdiction only if the defect misleads the appellee." *Id.* at 924. In sum, we hold that the defect in Cook's notice of appeal does not deprive us of jurisdiction to reach the merits of the appeal.

### III.

Navistar next contends that we are precluded from reaching the merits of plaintiff's evidentiary arguments because, under Wisconsin law, once both parties are found negligent (as in this case) and the jury determines the parties' relative contribution to the injury, all evidentiary squabbles regarding the effect of excluded evidence fall by the wayside. This is true, Navistar argues, because in Wisconsin the jury allocates *causation* between the two parties (as distinct from "blame"), and therefore the jury would not change its decision that the injury was caused by certain forces simply because it may have received additional evidence that one of the parties was more negligent than the other. Navistar thus contends that "the 'magnitude' of [its] negligence is simply irrelevant to the allocation of causal negligence, the determinative issue in this case." Support for Navistar's argument comes from *Taylor v. Western Casualty & Surety Co.*, 270 Wis. 408, 411–12, 71 N.W.2d 363, 365 (1955):

> The apportionment of negligence is the peculiar province of the jury. The degree of negligence attributable to a particular party is not to be measured by the character thereof nor by the number of respects in which he is found to have been at fault. It is the conduct of the parties considered as a whole which should control. In other words, once it has been established that each has been negligent, it is then the jury's function to weigh their respective contributions to the result, which will, regardless of the nature of their acts or omissions, determine which made the larger contributions and to what extent it exceeds or is less than that of the other.

We note first that this passage does not unambiguously support Navistar's position. If, as *Taylor* suggests, the jury looks to "the conduct of the parties considered as a whole" in allocating damages, then a party who claims that the judge failed to allow it to provide the jury with the whole picture has a cognizable argument on appeal.

In any event, *Taylor* is no longer good law. Although the above-quoted language in *Taylor* was cited in passing in a case that discussed general principles of contrib-

utory negligence, *see Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 199, 342 N.W.2d 37, 53 (1984), the Wisconsin Supreme Court explicitly overruled *Taylor* in *Lovesee v. Allied Development Corp.*, 45 Wis.2d 340, 346, 173 N.W.2d 196, 199 (1970). Noting that *Taylor* "no longer represents the law" of the state, the court in *Lovesee* made clear that "the nature or character or respects of negligence ... bear a relationship to cause," and that in determining the parties' contribution to the injury the jury had to determine "to what extent each party is to blame for the accident." *Id.* at 345, 173 N.W.2d at 199. The court explained that the language in *Taylor* and other cases of its era simply "meant [that] there was no mathematical formula" the jury should or could employ in allocating causation under comparative fault. *Id.* We therefore reject Navistar's claim that Wisconsin law precludes an investigation into the substance of the trial court's evidentiary rulings and their effect on the plaintiff's case.

## IV.

We turn now to Cook's claim that the jury's verdict was skewed by the district court's evidentiary rulings. "Our standard of review in determining whether the district court committed reversible error in either the admission or exclusion of evidence is abuse of discretion." *Taylor v. National R.R. Passenger Corp.*, 920 F.2d 1372, 1375 (7th Cir.1990); *see also Geitz v. Lindsey*, 893 F.2d 148, 150 (7th Cir.1990); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1266 (7th Cir.1988). This standard leaves Cook with "a heavy burden," *Geitz*, 893 F.2d at 150, since " '[u]nder the "abuse of discretion" standard of review, the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather, whether *any* reasonable person could agree with the district court.' " *Nachtsheim*, 847 F.2d at 1266 (quoting *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir.1984)). "The determination that [an error was made] ... does not of course end the inquiry, for not all errors warrant the reversal of the verdict below." *Harris v. Davis*, 874 F.2d 461, 465 (7th Cir.1989); *see also* Fed.R. Civ.P. 61; *Nachtsheim*, 847 F.2d at 1266. "[H]armless error with respect to the admission or exclusion of evidence is not cause for reversal." *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 491 (7th Cir.1988).

Plaintiff focuses on the exclusion of evidence in four areas: (1) the industry publications; (2) the regulations found at 49 C.F.R. § 399; (3) the rectangular step used prior to the oval step; and (4) the rebuttal evidence offered after defendant closed its defense. We address each of these areas in turn.

### A. Industry Publications

Plaintiff claims that the district court erred in excluding certain industry publications he had offered. Plaintiff did not claim below that the industry literature was admissible under the "learned treatise" exception, *see* Fed.R.Evid. 803(18), or that it was admissible as a basis of his expert's opinion, *see* Fed.R.Evid. 703, but rather that the evidence was merely offered to demonstrate the knowledge possessed by a reasonably competent design engineer who kept up with industry publications and standards. The judge excluded the proffered evidence, noting several areas of concern. First, some of the articles were undated or concerned completely different climbing systems or vehicles, and thus raised both authenticity and relevancy concerns. Second, the court was concerned that, despite plaintiff's claim that the documents were offered solely to show defendant's constructive or actual knowledge of design standards, the jury would accept the information contained in the documents for the truth asserted therein. Under the judge's analysis, the jury's inability to view the evidence solely for its intended use meant that the evidence was indeed hearsay even though it had not been offered by the plaintiff for its truth. Since the plaintiff did not make an argument that the evidence could be introduced under an exception to the hearsay rule, the judge held the evidence inadmissible. The court summarized its concerns as follows:

I think this, that under the notion that these are admissible because these are what reasonable designers consider and, therefore, not for the truth or falsity of the facts contained therein is an unacceptable notion for the court. I just don't think you can put these things in without talking about the truth or falsity of what is contained in them.... In addition, I think some of these do have an actual factual authenticity problem.... Once I decide that I cannot accept these because ... I think it is naive to think they are not admitted for the truth or falsity, I think I'd have to go to a hearsay analysis of the circumstance once I get by the authenticity problem.... [T]here are several exceptions to the hearsay rule that might be implicated by these documents, but I haven't heard any foundation on that and I haven't heard any testimony on that.

Transcript of Dec. 6, 1988, at 60–62. Despite the court's suggestion that the plaintiff attempt to introduce the evidence under a hearsay exception (or as a basis for his expert's opinion), the plaintiff continued to insist that the evidence was admissible under Fed.R.Evid. 401 and that the court was employing an improper analysis. The court concluded that, given plaintiff's refusal to alter his proposed basis for admitting the evidence, the plaintiff would be permitted to use the publications only to impeach the defendant's experts on cross-examination.

On appeal, plaintiff returns to the argument that the industry publications were admissible to show the actual or constructive knowledge of the defendant and that in this case the defendant failed to manufacture a product of the quality that a reasonable engineer (having read these articles) would have produced. Plaintiff argues that he was forced to rely solely on his expert's testimony, unsupported by objective scientific evidence about the design problems identified in the industry. According to the plaintiff, this ruling was prejudicial to his case because it allowed the defendant to argue to the jury that it had manufactured the best product it knew how and the plaintiff was unable to rebut this assertion.

We conclude that any error in the trial court's ruling was harmless. It is true, as plaintiff argues on appeal, that the court should not have excluded the evidence in question as hearsay. The evidence was not offered for the truth of the matter asserted, it was offered to show actual or constructive knowledge and was admissible on that basis. *See, e.g., Marsee v. United States Tobacco Co.*, 866 F.2d 319, 325–26 (10th Cir.1989) (publications admissible to show party's notice); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 686–87 (11th Cir.1984) (reports admissible to show notice). But, as the defendant argues, the substance of the plaintiff's relevant proffered evidence was admitted during the testimony of his expert. Plaintiff's expert testified at length about the industry standards and practices in existence at the time the 9670 was manufactured. In doing so, the expert provided a basis for the jury to believe that the defendant had notice of prevailing design standards and that it did not, in fact, produce "the best system it could have" given this knowledge. The jury's finding that Navistar negligently designed the system supports the inference that the jury found the expert's testimony to be credible and persuasive. Plaintiff maintains, however, that the judge's exclusion of the industry publications "reduced a complex product liability action to a tainted battle of mere expert testimony." While this characterization is questionable, we are convinced that the exclusion of the proffered evidence was harmless given the expert witness' testimony at trial.

### B. The Governmental Regulations

Plaintiff next claims that the district court erred when it excluded evidence of the existence of the section 399 regulations on grounds that its probative value was outweighed by its prejudicial effect. The district court thought the jury would apply the regulation retroactively to the defendant if admitted into evidence. Plaintiff claims on appeal that the court failed to give sufficient weight to the probative value of the regulations when it ruled them

inadmissible. The district court determined that it could not formulate a limiting instruction that would adequately prevent the jury from applying the regulation retroactively. While the plaintiff claims that the court could have devised an effective limiting instruction, he does not proffer such an instruction himself. Without further support, the plaintiff has failed to demonstrate that the district court's decision was an abuse of discretion. We believe that the district court's decision to exclude evidence of a governmental regulation that did not become effective until a year after the defendant manufactured an allegedly defective product was within the court's discretion and reject plaintiff's claim to the contrary.

### C. The Earlier Rectangular Step

■ The district court barred evidence regarding the existence of the earlier rectangular step on grounds that it would inevitably lead to the introduction of the section 399 regulations that the court had earlier deemed inadmissible. The defendant, reasoned the court, would have had to rely on the regulations to explain why it had altered the design of the step in the first place. Plaintiff claims that the court improperly excluded introduction of the earlier step under Fed.R.Evid. 407. Rule 407 prohibits the introduction of "evidence of subsequent remedial measures ... to prove negligence or culpable conduct." As the rectangular step was not a subsequent alteration but a prior one, plaintiff argues that the district court erred in its reliance on Rule 407. A close reading of the court's reasoning, however, reveals that the court ruled this particular evidence inadmissible under Fed.R.Evid. 403 rather than Fed.R.Evid. 407. The court's concerns regarding prejudicial effect were not far-fetched; had the plaintiff offered evidence that the defendant had used a different, larger step on the 9670 for a period of time and then

had gone back to the smaller, oval step, it would have been necessary to provide the jury with some explanation for its conduct. The defendant claims that explanation would have implicated the excluded regulation; plaintiff does not argue to the contrary, for example, by claiming that there was a different explanation for the design changes. We thus conclude that the district court's decision was well within its discretion and reject plaintiff's claim on this point.

### D. The Rebuttal Evidence

■ Finally, plaintiff challenges the district court's decision to preclude the introduction of rebuttal evidence. After defendant presented its case, plaintiff sought to introduce as rebuttal the testimony of two truck drivers who had previously worked with Cook. The witnesses were to testify that they had heard of similar falls from the defendant's trucks.[5] The district court rejected this evidence on two grounds: (1) the evidence was not proper rebuttal evidence because it could have been offered in plaintiff's case-in-chief; and (2) testimony that the witnesses "had heard of other falls" was independently inadmissible under Fed.R.Evid. 403 (prejudice outweighs probative value) and 801 (hearsay excluded).

On appeal, the plaintiff argues strenuously that the evidence was proper rebuttal evidence because it refuted evidence that could not possibly have been brought out in the plaintiff's case-in-chief; namely, the issue of contributory negligence. Plaintiff argues that he was not required to introduce the proffered evidence until the defendant put plaintiff's conduct in question in its own case. *See, e.g., Benedict v. United States,* 822 F.2d 1426, 1428 (6th Cir.1987) (" 'plaintiff has no duty to anticipate or negate a defense theory in plaintiff's case-in-chief' ") (quoting *Martin v. Weaver,* 666 F.2d 1013, 1020 (6th Cir.1981)). Even if

---

**5.** The witnesses also sought to testify that they personally preferred the larger step and that three-point contact on the 9670 was difficult. This testimony was clearly evidence that could have been (and in the case of the three-point contact, was) admitted during plaintiff's case-in-

chief. The exclusion of this evidence was within the broad discretion of the district court. *See, e.g., Datamatic Servs., Inc. v. United States,* 909 F.2d 1029, 1033 (7th Cir.1990); *Spesco, Inc. v. General Elec. Co.,* 719 F.2d 233, 239–40 (7th Cir.1983).

this were true, the evidence plaintiff proffered (that two of plaintiff's fellow employees had heard of other falls from the oval step) was certainly excludable on the other grounds cited by the district court. There is a strong argument that the evidence was inadmissible on hearsay grounds, and the district court determined in its broad discretion that the evidence would have been prejudicial under Fed.R.Evid. 403. Plaintiff's claims on appeal fail to address these alternative grounds for exclusion and thus he has failed to demonstrate that the district court abused its discretion in excluding this evidence. *Nachtsheim,* 847 F.2d at 1266; *Sims v. Mulcahy,* 902 F.2d 524, 531 (7th Cir.1990). We conclude that the district court did not err in refusing to allow plaintiff to offer rebuttal evidence in this case.

## V.

In sum, the rulings of the district court regarding the admissibility of evidence in this product liability case were sound. The judgment of the district court is therefore AFFIRMED.