LANG, Executrix, Respondent, vs. BAUMANN and another, Appellants.

*November 7—December 5, 1933.*

260

For the appellants there were briefs by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith.*

*Russell E. Hanson* of Fond du Lac, for the respondent.

WICKHEM, J. The first contention of defendants is that the evidence does not sustain the conclusion that Baumann was negligent or that his negligence was a cause of the collision which resulted in the death of Lang. This requires an examination of the facts disclosed by the record.

Lang was a guest in Baumann's car and was instantly killed as the result of a collision between the car of his host and a car driven by one Seale, who is not a party to this action. The accident happened at the intersection of Third and Stewart avenues in the city of Wausau. Third avenue runs north and south, and was an arterial highway at the point of the collision. On the southwest corner of the intersection of Stewart and Third avenues is a business block extending to the sidewalk line, partly obscuring the vision of drivers entering the intersection from Third avenue from the south, and of those entering the intersection from Stewart avenue going east. Baumann was proceeding north on Third avenue. The street was covered with ice and snow and was extremely slippery. Most of the testimony was to the effect that Baumann approached the intersection at a speed of from fifteen to twenty miles an hour, although the testimony of

two witnesses, who had a very restricted opportunity to judge, put the speed of Baumann at thirty miles an hour or greater. Baumann testified that he looked to the left when approximately twenty to thirty feet south of the south crosswalk of the intersection, and saw the Seale car approaching from the west about the same distance from the west crosswalk as he was from the south crosswalk. Upon his adverse examination he fixed the point at which he first saw the Seale car as thirty-five feet south of the south line on Third avenue. Plaintiff and defendants are in dispute as to the proper construction to be placed upon certain testimony of Baumann as to the point at which he determined that the Seale car was not going to stop for the arterial. Some of his evidence is open to the construction that he had no reason to believe that the Seale car was not going to make the arterial stop until both cars were at the crosswalks, and that since the condition of the street made it then impossible to stop, he increased his speed in an attempt to clear the intersection ahead of the Seale car. Plaintiff relies upon the following statement by Baumann:

"From the time that I saw it until it reached the intersection, it did not appear to me as if this Packard car was going to stop at the arterial."

At all events it is clear that Baumann did increase his speed in an attempt to clear the intersection, and that the Seale car struck the left rear fender of the Baumann car, turning the car around so that its right rear struck a telephone post on the northeast curb, instantly killing Lang.

Defendants' first claim is that there was no evidence as to an improper speed since the witnesses who put the speed at upwards of thirty miles an hour had no adequate opportunity to judge the speed, and since the speed testified to by the other witnesses of fifteen to twenty miles an hour was within the limit of the law. Defendants' contention in this respect has no merit. The establishment of a speed limit for resi-

dential districts does not mean that persons driving at less than the permitted speed are as a matter of law exonerated from negligence with respect to speed. The roads were extremely icy, and even assuming that the jury should not have been permitted to infer a greater speed than twenty miles an hour, they had the right to infer negligence in approaching an obstructed corner on an icy street at that rate of speed.

The next contention of the defendants is that there was no evidence to sustain a finding of negligence with respect to control. This is based upon the contention that Baumann made no attempt to stop his car because of a legitimate assumption upon his part that the other car would respect the arterial sign, and that he had a right to make this assumption until it was obvious that the other car did not intend to stop. We think, however, that there was a jury question arising out of Baumann's admission that it did not appear to him, from the first time he saw the Seale car, that it was going to stop at the arterial. The jury were entitled to believe that Baumann had no reason to rely upon the assumption that the Seale car was going to stop.

The next contention is that there is no evidence to sustain the view that Baumann was guilty of violating sec. 85.40 (4), Stats., which provides as follows:

"(4) *Traversing intersections.* In traversing intersections where the operator does not have a clear view of approaching traffic on the intersecting highway or highways, the speed of such vehicle shall not be greater than that which will permit the operator to stop within one-half of the distance within which he is able to see approaching traffic."

It is defendants' position that this statute has no applicability to the facts of this case. Defendants contend that sec. 85.40 (4) means that Baumann must have been able to stop his car within one-half of the distance between his car and the Seale car at the point where he first saw it. Plaintiff

denies that this is the proper construction to give the statute, and contends that, by its terms, a driver, approaching an obstructed intersection, must be able to stop his car within one-half of the distance he can see ahead to the point where the cars would collide.

The construction urged by defendants cannot be sustained. The operator of a vehicle, under the conditions described by sec. 85.40 (4), must maintain such a speed as will enable him to stop "within one-half of the distance *within which* he is able to see approaching traffic." If this means that a driver forty feet from the place where the vehicles will meet at the intersection may maintain a speed which will enable him to stop within fifty feet, if at that point he has a vision of one hundred feet along the crossroad, the statute will certainly have little effect in promoting safety at intersections. Furthermore, an operator has no means, under this theory, of ascertaining his statutory obligations until he arrives at a point at which he can see the crossroad beyond the obstruction. On the other hand, if his obligation is to maintain a speed that will enable him to stop within one-half of the distance to the intersection, he has at all times a measure of his duty with respect to a visible object, namely, the approaching intersection, which is likewise the point of danger. The language of the section is consistent with this view. He must be able to stop within one-half of the distance *within which* he can see approaching traffic, not one-half of the distance that he can see approaching traffic. The distance *within which* he can see is that between the point at which he first can see approaching traffic and the point at the intersection for which he will be competing with such traffic. It is also a fair presumption that when the statute refers to a distance *within which* a car might stop, it is referring to a distance measured along the course of the vehicle's travel. The obligation imposed by this statute upon a driver, as stated in

*Mader v. Boehm, ante,* p. 55, 250 N. W. 854, is to so reduce his speed·as he approaches the obstructed intersection as to enable him to stop within one-half of the distance to the intersection, when the point at which he is able to see approaching traffic is reached. This view of the statutory obligation is in accordance with the decisions of this court in *Paluczak v. Jones,* 209 Wis. 640, 245 N. W. 655; *Obenberger v. Interstate Oil Co.* 211 Wis. 245, 248 N. W. 97. In referring to the speed of the defendant in the latter case, this court, speaking through Mr. Justice FOWLER, said:

"The house, shrubbery, and trees at the northeast corner of the intersection prevented him from seeing defendant's truck until he was within fifty feet of the intersection. He was then traveling so fast that he could not stop within the fifty feet, to say nothing of stopping within one-half that distance."

It is our conclusion that the jury were entitled to believe that under the conditions present at the time of the accident, Baumann did not so reduce his speed as to conform to the requirements of sec. 85.40 (4). This being true, we think it impossible to eliminate as a matter of law these various items of negligence as proximate causes of the injury to deceased. The jury were entitled to believe that Baumann's speed in approaching the obstructed corner, and his determination to negotiate the crossing ahead of the Seale car, after it became apparent that the Seale car was not going to stop, were substantial factors in producing the collision.

Defendants' next contention is that the court should have submitted to the jury a question upon assumption of risk, in view of the host-guest relationship between Baumann and deceased. There was no showing of any habits of negligent driving known to Lang, and as to which he might be held to have assumed the risk. There is no evidence that Baumann had been driving at an excessive rate of speed for a sufficient

length of time to call for protest on the part of Lang. Baumann had brought his car nearly to a stop approximately half a block from the scene of the accident, and thereafter had increased his speed to that maintained as he approached the immediate vicinity of the intersection. The conduct which is the foundation of his liability here did not persist long enough to enable a jury to conclude that there was a duty to protest on the part of Lang. The events upon which liability is predicated took place within a few seconds and during the course of a short ride, in which there appears to have been no previous occasion for protest. It is therefore concluded that there was no error with respect to submitting the question of assumption of risk. Had there been an issue, the submission of the question as to deceased's contributory negligence, with instructions fully explaining and applying to it the doctrine of assumption of risk, may be said to have covered the issue substantially. Hence, while the submission was inaccurate, it did not constitute reversible error.

It is assigned as error that the court excluded evidence offered by all of the occupants of the Baumann car that there was nothing Baumann could have done to avoid the collision. The case of *Olson v. Hermansen,* 196 Wis. 614, 220 N. W. 203, is cited as authority for the admission of such evidence. In that case one of the plaintiffs testified that the defendant drove the car as she usually did, and that she did not think defendant was to be blamed for the manner in which she drove the car. This was stricken out by the trial court, and this court held that it should have been permitted to stand. The testimony offered in that case, that plaintiff did not think the defendant should be blamed for the manner in which the car was driven, was receivable as an admission by a party to the action. It is quite a different thing to ask for the opinion of a mere witness upon a matter not involving science or skill which covers the ultimate question to be de-

cided by the jury. Such evidence is properly excluded. *Benson v. Superior Mfg. Co.* 147 Wis. 20, 132 N. W. 633.

Defendants also contend that the court erred in overruling defendants' plea in abatement. This presents the question whether ch. 375, Laws of 1931, amending sec. 260.11, has changed the doctrine of *Morgan v. Hunt,* 196 Wis. 298, 220 N. W. 224, and *Bergstein v. Popkin,* 202 Wis. 625, 233 N. W. 572, and has made ineffective clauses in liability policies which defer action against the insurer until the damages are fixed by final judgment against the insured. The chapter involved provides:

"In any action for damages caused by the negligent operation . . . of a motor vehicle, any insurer of motor vehicles, which has an interest in the outcome of such controversy adverse to the plaintiff, . . . is by this section made a proper party defendant in any action brought by plaintiff on account of any claim against the insured."

The policy issued to Baumann by the defendant insurance company provides:

"No action shall lie against the company . . . until damages are fixed by final judgment against the insured."

The principal basis for defendants' contention that the rule of the *Bergstein* and *Morgan Cases* has not been overruled is that the legislature, at the same session, declined to enact a bill which expressly forbade insurance companies to include within the policy a provision deferring the time of suit until judgment should be had against the insured. We deem this contention to be without merit. In the *Bergstein Case* it was the court's conclusion that the amendment which was there urged as modifying *Morgan v. Hunt, supra,* did not prevent a plea in abatement in cases of this type of no-action clause. The court said:

"The act which was passed . . . related wholly and solely to liability, while the bill which was refused passage related

distinctly to who might be parties defendant. The legislature quite evidently was willing to make the liability of the insurer to the injured person as absolute as possible, but was not willing to deprive the insurer of the right to postpone suit against it until the amount of the damage had been ascertained as provided."

The court plainly indicated the sort of amendment that it considered necessary to render ineffective clauses postponing actions against the insurer until judgment had been taken against the insured. The legislature has followed the precise method suggested by the court, and the amendment immediately followed the decision in this case. We entertain no doubt that the legislative intent was to change the doctrine of the *Morgan* and *Bergstein Cases*. If there is any basis for doubt, it is dissipated by the provisions of sub. (2) of sec. 260.11, which provides in detail for the situation created when the insurer who has been joined has a cross-issue with the insured.

*By the Court.*—Judgment affirmed.