Melanie DAVIS, et al., Respondents,

v.

Robert F. FURLONG, Respondent,

and

Russell J. Knudsen, et al., Appellants.

No. 81–916.

Supreme Court of Minnesota.

Jan. 7, 1983.

Rehearing Denied Feb. 3, 1983.

Holst Vogel Erdmann & Vogel and George F. Vogel, Masonic Bldg., Red Wing, for appellants.

Richard W. Johnson, Red Wing, for Davis, et al.

Stringer, Courtney & Rohleder and Owen L. Sorenson, St. Paul, for Furlong.

PETERSON, Justice.

This appeal presents a choice-of-law issue concerning the applicability of Wisconsin's direct action statute or Minnesota's common law prohibition of direct actions against an insured's liability carrier. The district court summarily granted plaintiffs' motion to join insurer as a defendant. We reverse.

Plaintiff, Melanie Davis, was severely injured on January 19, 1979, in a collision between the car in which she was riding, driven by defendant Russell J. Knudsen, and a car driven by defendant Robert F. Furlong. The accident happened near Hager City, Wisconsin, but plaintiff received medical care in Minnesota, first in Red Wing, then in Rochester.

Suit was brought in Minnesota by plaintiff and her father, both residents of this state, against Furlong, Knudsen, and Knudsen's father, who owned the Knudsen vehicle and was the sponsor for his minor son's Wisconsin driver's license. Furlong is a Minnesota resident; the Knudsens reside in Wisconsin. The complaint seeks damages for plaintiff's personal injuries and medical expenses.

After the action was commenced, the Davises moved to join American Family Insurance Company as a defendant. American Family provides liability insurance coverage for the Knudsens under a policy entered into in Wisconsin. We assume from indications in the record that American Family does business in Minnesota and would be subject to the jurisdiction of our courts if found a proper party defendant. Defendants Knudsen appeal from the order of the trial court, dated August 4, 1981, granting the motion.

■ Under Minnesota law, an injured party has no direct cause of action against a negligent party's insurer prior to recovery of judgment against the insured. *Miller v. Market Men's Mutual Insurance Co.,* 262 Minn. 509, 115 N.W.2d 266 (1962). Wisconsin, on the other hand, has enacted two statutory provisions which, operating in tandem, permit direct actions even if the policy of insurance contains a clause purporting to prohibit such actions until judgment is obtained against the insured. Wis. Stat. §§ 632.24, 803.04(2) (1979–80); *see Lang v. Baumann,* 213 Wis. 258, 251 N.W. 461 (1933); *Oertel v. Williams,* 214 Wis. 68, 251 N.W. 465 (1933). Where only section 632.24 (direct liability statute) is applicable, and not section 803.04(2) (direct action statute), Wisconsin law is settled that a "no-action clause" will be given effect, and judgment must be entered against the insured before a direct action can be brought. *Frye v. Angst,* 28 Wis.2d 575, 137 N.W.2d 430 (1965), *Morgan v. Hunt,* 196 Wis. 298, 220 N.W. 224 (1928). The Knudsen policy contains a no-action clause. Therefore, a direct action could be brought in Wisconsin against their insurer, American Family, only by operation of Wis.Stat. § 803.04(2) (1979–80).

In 1946, against an indistinguishable factual and statutory backdrop, we considered the very issue that is raised by this appeal. *Anderson v. State Farm Mutual Automobile Insurance Co.,* 222 Minn. 428, 24 N.W.2d 836 (1945). There we examined the Wisconsin direct liability and direct action statutes, in their earlier versions, and classified the former as a substantive provision and the latter as procedural. Following traditional conflict-of-law principles, we held that the Wisconsin direct liability statute, creating substantive rights, would govern as the law of the place of the contractual transaction (*lex loci contractus*). But since the direct action statute was seen as a procedural rule for joinder of parties,[1] it would yield to the forum state's rules of joinder under the principle that procedural matters are governed by *lex fori.* Joinder of the insurer was not permitted, therefore, because the no-action clause in the tortfeasor's policy was not overriden by any applicable procedural rules.

■ 1. Before we can declare that the holding in *Anderson* compels denial of joinder in the present action, we must consider the transformation of conflict law in the intervening years since *Anderson* was decided. The analysis to be followed has changed, but we conclude that the outcome in this case is the same: joinder is not permitted.

In *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973), we abandoned the mechanical *lex loci* rule for selecting the applicable substantive rule in a conflict-of-law situation. We adopted a five-factor methodology of analysis, which considers: (a) predictability of results; (b) maintenance of interstate and international order; (c) simplification of the judicial task; (d) advancement of the forum's governmental interests; and (e) application of the better rule of law. *Id.* at 161, 203 N.W.2d at 412. We had no occasion in *Milkovich* nor in subsequent cases to comment on whether the methodology adopted there would also displace the common law rule of *lex fori* where procedural rules are in conflict.[2] Our hold-

---

1. In *Miller v. Wadkins,* 31 Wis.2d 281, 142 N.W.2d 855 (1966), the Wisconsin Supreme Court stated that this section "is procedural, and determines when an insurer can be made a party despite its no-action clause."

2. A federal court applying Minnesota law in a diversity action has held that the *Milkovich* analysis is not applicable to conflicts in procedural laws. *Cuthbertson v. Uhley,* 509 F.2d 225 (8th Cir.1975). Since at that time we had not yet considered the issue, the *Cuthbertson* court was undoubtedly correct, but that decision is without precedential value here.

One year after *Milkovich,* we applied the choice-influencing considerations to a case involving the direct action statute of Louisiana. *Myers v. Government Employees Insurance Co.,* 302 Minn. 359, 225 N.W.2d 238 (1974). Preliminary to our application of the *Milkovich* analysis we examined whether the Louisiana direct action statute creates substantive or procedural rights. Because we concluded that the rights were substantive, we did not have reason to extend the *Milkovich* analysis into the realm of procedural rules.

ing in *Anderson* with respect to Wisconsin law, however, forces us to address the issue of whether the choice-influencing considerations provide a rational framework in which to decide conflict-of-law questions involving arguably procedural rules. We conclude that the *Milkovich* analysis should not be extended to conflicts of procedure.

This court has for many years followed the almost universal rule that matters of procedure and remedies were governed by the law of the forum state. *Stotzheim v. Djos,* 256 Minn. 316, 319 n. 2, 98 N.W.2d 129, 131 n. 2 (1959); *Anderson v. State Farm Mutual Auto. Ins. Co.,* 222 Minn. 428, 432, 24 N.W.2d 836, 839 (1946); *Weston v. Jones,* 160 Minn. 32, 35, 199 N.W. 431, 432–33 (1924); *Bond v. Pennsylvania R. Co.,* 124 Minn. 195, 198, 144 N.W. 942, 943 (1914); *Brunette v. Minneapolis, St. Paul & S. Ste. M. Ry. Co.,* 118 Minn. 444, 448, 137 N.W. 172, 173 (1912); *Fryklund v. Great Northern Ry. Co.,* 101 Minn. 37, 39, 111 N.W. 727, 728 (1907); *Herrick v. Minneapolis & St. Louis Ry. Co.,* 31 Minn. 11, 13, 16 N.W. 413, 413–14 (1883), *aff'd,* 127 U.S. 210, 8 S.Ct. 1176, 32 L.Ed. 109 (1888). The existence of such long-settled precedent should and does give us pause before overruling these cases by extending the five-factor analysis to procedural matters. Professor Robert A. Leflar, author of the five-factor analysis, also recognizes the importance of the rule:

> It is traditional that a forum court always applies its own procedural rules and practices, regardless of the procedure that might be employed if the case were tried at the place where the cause of action arose. Practical necessity requires that this be done. Procedure has to do with the available judicial machinery and its mode of operation, and it would be unthinkable for New York, in the trial of a set of facts arising from Louisiana, or California, or Ontario, to have to set up judicial machinery such as exists in the other legal entity, and operate it in the other state's· fashion. If that were done, New York lawyers and judges would have to learn an entirely new set of procedural rules for each new extrastate case they tried. That would delay the conduct of judicial business and impair judicial efficiency in other ways as well. Clearly the local procedure must be employed.

R. Leflar, American Conflicts Law § 121 at 239 (3d ed. 1977) (footnotes omitted).

We hold that when conflicts of procedure arise, the *lex fori* is to be applied. The *Milkovich* methodology is applicable only to conflicts of substantive law. Therefore, the trial court's order allowing joinder of the insurer was erroneous.

Reversed.

TODD, Justice (dissenting).

I respectfully dissent. I would extend the *Milkovich* doctrine to include procedural issues. The third of the five choice-influencing considerations adopted in *Milkovich* is "simplification of the judicial task." 295 Minn. at 161, 203 N.W.2d at 412. That consideration embodies the *raison d'etre* of the *lex fori* doctrine and its application will serve the purposes formerly served by the common-law rule. But there are stronger reasons for extending the *Milkovich* methodology to all conflict-of-law questions. Rules of law do not fall neatly on either side of the substantive-procedural line. They impact in varying degrees upon the rights of the parties involved, and indirectly, upon the governmental interests at stake. The five choice-influencing considerations effectively take into account these various private and public interests and prevent the automatic application of forum law as if rules of procedure had no effect whatsoever on these interests. "There are outcome-affecting extrastate rules, phrased procedurally, that a court can apply as easily as it can apply its own rules. As to such rules, a hard-and-fast procedural characterization leading inevitably to application of forum law is wrong." R. Leflar, American Conflicts Law § 121, at 240 (3d ed. 1977). Further support of this view also comes from Professor Leflar, to whom we are indebted for first proposing the principles of law adopted in *Milkovich v. Saari,* 295 Minn. 155, 203 N.W. 408 (1973). He states:

"Rules asserted to be procedural for conflicts purposes ought to be analyzed, in their factual contexts, in terms of the relevant choice-influencing considerations, just as rigorously as other rules of law are analyzed in their own contexts in terms of the considerations." R. Leflar, American Conflicts Law § 121, at 240 (3d ed. 1977).

YETKA, Justice (dissenting).

I join in the dissent of Justice Todd.

SCOTT, Justice (dissenting).

I join in the dissent of Justice Todd.

WAHL, Justice (dissenting).

I join in the dissent of Justice Todd.