**STATE TRADING CORPORATION OF INDIA, LTD., Plaintiff-Appellant,**

v.

**ASSURANCEFORENINGEN SKULD, Defendant-Appellee.**

No. 312, Docket 90-7170.

United States Court of Appeals, Second Circuit.

Argued Sept. 24, 1990.

Decided Dec. 7, 1990.

David L. Maloof, New York City (Roman Badiak, Badiak, Will & Maloof, New York City, of counsel), for plaintiff-appellant.

Robert P. Dolian, Stamford, Conn. (Andrew R. McGaan, Cummings & Lockwood, Stamford, Conn., Peter A. Junge, Lilly, Sullivan, Purcell, Barkan & Junge, P.C., New York City, of counsel), for defendant-appellee.

Before NEWMAN and ALTIMARI, Circuit Judges, and PIERCE, Senior Circuit Judge.

PIERCE, Senior Circuit Judge:

Plaintiff State Trading Corporation of India, Ltd. ("STC") appeals from orders of the United States District Court for the District of Connecticut (Daly, *Judge*) granting the summary judgment motion of defendant Assuranceforeningen Skuld ("Skuld") and denying STC's motion seeking leave to amend its complaint. STC, after unsuccessfully attempting to enforce a $14 million arbitration award relating to its loss from the sinking of a cargo ship, brought this admiralty action against the shipowner's insurer under Connecticut's "direct action" statute, Conn.Gen.Stat. § 38–175 (1989), which permits a judgment creditor to directly sue the judgment debtor's insurance carrier. Skuld moved to dismiss the action on several grounds, including the inapplicability of Connecticut's direct action statute under choice of law analysis. In a recommended ruling, the magistrate found that Connecticut law had "absolutely no bearing on this litigation," and accordingly recommended that Skuld's summary judgment motion be granted. The district court agreed with the magistrate and adopted her ruling. After judgment was entered, STC moved for reconsideration and leave to file an amended complaint to plead new causes of action based on foreign law. The district court denied this motion, also on the recommendation of the magistrate, because of STC's unjustified delay in seeking leave to amend.

For the reasons that follow, we affirm both determinations. Initially, we find that we do have jurisdiction to review both the grant of summary judgment and the denial of leave to amend. Reaching the merits, we agree with the district court that Connecticut law is inapplicable herein, and that therefore dismissal of the action was appropriate. Also, we find that the district court's denial of leave to amend was not an abuse of discretion.

## BACKGROUND

On June 25, 1982, the M/V "Go–Go Runner," a tanker carrying a load of soybean oil en route from Brazil to India sank in the Indian Ocean off the coast of Mozambique. STC, an Indian corporation, owned the soybean oil cargo that was lost when the ship sank. The ship was owned by Euroam Tankers, S.A., a Panamanian corporation, and operated and managed by Grunstad Shipping Corp. (Belgium) N.V., a Belgian corporation. Defendant-appellee Skuld, a Norwegian insurance association, insured the "Go–Go Runner" against certain risks,

including cargo loss or damage, under a policy issued to Euroam in Norway in 1979.

Following the sinking of the "Go–Go Runner," STC asserted a claim against Skuld for the cargo loss, but Skuld ultimately denied the claim, stating that "there was no indication of [the] vessel being unseaworthy at the time of [the] commencement of the voyage." STC then brought suit in the United States District Court for the Southern District of New York against Euroam, *et al.*, seeking to compel arbitration. The contract of carriage between STC and Euroam contained an arbitration clause requiring all disputes to be submitted to arbitration in New York. The district court (Weinfeld, *Judge* ) ordered arbitration against Euroam. On November 25, 1987, STC obtained an award against Euroam for $14,054,518.80, representing the cargo's value of $8,965,769 plus preaward interest. The district court (Conboy, *Judge* ) confirmed the award, as adjusted to include accrued interest, and a judgment dated March 30, 1988 was entered. No appeal was taken.

STC was unable to obtain satisfaction of the judgment from Euroam, which was dissolved as a corporation after the sinking of the "Go–Go Runner." STC next attempted to collect directly from Skuld, Euroam's insurer. On June 10, 1988, STC commenced this admiralty action against Skuld in the United States District Court for the District of Connecticut pursuant to Connecticut's direct action statute, Conn.Gen. Stat. § 38–175, which permits a judgment creditor to file suit against the insurer of the judgment debtor. Section 38–175 provides in relevant part:

> Upon the recovery of a final judgment against any person ... for loss or damage on account of ... damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.

Conn.Gen.Stat. § 38–175 (1989).

Skuld moved to dismiss the action or alternatively for summary judgment on four grounds, characterized by the magistrate as: (1) lack of personal jurisdiction; (2) improper forum under a contractual forum selection clause; (3) *forum non conveniens;* and (4) failure to state a claim due to the inapplicability of the Connecticut direct action statute under choice of law principles. STC cross-moved for summary judgment and sought attachment of Skuld's assets in Connecticut.

After a flurry of discovery disputes, the parties agreed that Skuld's motion to dismiss would be limited to the choice of law question, since no discovery was necessary on that issue. Accordingly, oral argument was heard on that issue only, while discovery on all other issues was held in abeyance. On December 4, 1989, Magistrate Margolis recommended that the district court grant Skuld's summary judgment motion.

The magistrate first considered the choice of law question in light of a choice of law clause incorporated into the insurance policy from Skuld's "Statutes and Rules," a set of organizational rules and general coverage provisions adopted by Skuld and revised periodically. Although the parties disagreed over which rules were incorporated—the 1988 provisions, which require the application of Norwegian law, or the 1983 provisions, which select "the law of the home country of the Member," in this case, Panama—the magistrate found she did not need to resolve this dispute, "for it is abundantly clear that under either set of rules, the *substantive* laws of the State of Connecticut, as expressed in Conn. Gen.Stat. § 38–175,. have absolutely no bearing on this litigation." (emphasis in original). Moreover, the magistrate found, both Panamanian and Norwegian law satisfy federal choice of law requirements, and therefore the choice of law clause should be respected.

The magistrate also applied federal choice of law principles and reached the same conclusion that Connecticut law was inapplicable. Noting that federal courts deciding which law to apply to a marine insurance contract will generally apply the law of the state with the most significant relationship with the insurance contract, the magistrate found that it was inappropriate to apply Connecticut law because the only nexus Connecticut had to the insurance policy was the presence within the state of Skuld's exclusive U.S. agent. Therefore, under both federal choice of law and contractual choice of law analysis, the magistrate recommended that Skuld's summary judgment motion be granted and that STC's cross-motion be denied as moot. Judge Daly agreed with the magistrate and granted summary judgment in favor of Skuld on January 8, 1990. Judgment was entered on January 19, 1990.

A week later, STC moved for reconsideration and leave to amend its complaint to add two additional causes of action based on Norwegian and Panamanian law. On February 28, 1990, Judge Daly denied the motion for reconsideration and referred STC's motion seeking leave to amend to Magistrate Margolis. The magistrate recommended that the post-judgment motion to amend be denied because of STC's unjustified delay in seeking to amend its complaint nineteen months after Skuld first challenged the applicability of Connecticut law. Judge Daly again agreed with the recommended ruling and, on April 9, 1990, denied the motion to amend.

On February 13, 1990, before the district court had issued the order denying the motion to amend, STC filed a notice of appeal of the January 19, 1990 judgment granting Skuld's summary judgment motion. On March 16, 1990, the parties agreed to withdraw this notice of appeal in order to allow the magistrate and district court to rule on STC's pending motion seeking leave to amend. That stipulation reads:

Although the District Court, on Feb. 28, 1990, denied reconsideration, it referred to Magistrate Margolis plaintiff's motion seeking leave to amend, which may be viewed as the "functional equiva-lent" of a FRCP 59(e) motion, see *Rados v. Celotex*, 809 F.2d 170 (2d Cir.1986).

The undersigned hereby stipulate that the above appeal is hereby withdrawn without costs and without attorneys fees, and without prejudice to appealing when appealable, i.e., after the district court denies plaintiff's motion for leave to amend. At that time, plaintiff can file its notice of appeal from the underlying judgment, the Feb. 28, 1990 denial of reconsideration and any denial of leave to amend the complaint.

After the district court denied the motion seeking leave to amend, STC filed another notice of appeal on May 4, 1990. This second notice states that an appeal is taken from the April 9, 1990 judgment, which denied STC's motion seeking leave to amend. On the upper right-hand corner of the notice of appeal, the District Court Clerk's office made the following notation:

Notice of Appeal Construed as a Notice of Re–Instatement of Docket # 90–7170, pursuant to the USCA (2nd Cir.) Order of March 16th, 1990.

## DISCUSSION

### I. *Jurisdiction to Hear Appeal of Summary Judgment*

■ We turn first to Skuld's argument that this Court lacks jurisdiction to consider an appeal of the January 19, 1990 summary judgment because the first notice of appeal was withdrawn and the second referred only to the April 9, 1990 order denying leave to amend.

The Federal Rules of Appellate Procedure require that the notice of appeal "designate the judgment, order or part thereof appealed from." Fed.R.App.P. 3(c). While the combined requirements of Rules 3 and 4 of the Federal Rules of Appellate Procedure are to be treated as a single jurisdictional threshold and may not be waived, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315, 317, 108 S.Ct. 2405, 2408, 2409, 101 L.Ed.2d 285 (1988), in determining whether Rule 3(c) has been complied with herein, we are guided by the principle that the requirements of the rules should be

liberally construed. *See id.* at 316–17, 108 S.Ct. at 2408–09; *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962); *see also Terkildsen v. Waters*, 481 F.2d 201, 206 (2d Cir.1973) ("We have often enough manifested our willingness to construe notices of appeal liberally.").

■ In *Foman v. Davis*, the plaintiff filed a premature notice of appeal from the dismissal of her complaint, while motions to vacate the dismissal and amend her complaint were still pending. The second notice of appeal, filed after the post-dismissal motions were denied, designated only the denial of the motions and failed to specify that an appeal was taken from the earlier dismissal judgment as well. The Supreme Court reversed the Court of Appeals, finding that it took a too restrictive view of the rules in determining that it lacked jurisdiction:

> Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial of the motions was manifest.…
>
> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.

*Foman*, 371 U.S. at 181, 83 S.Ct. at 229.

The procedural facts here are very similar to those in *Foman*. STC withdrew its first appeal of the summary judgment because its motion to amend was still pending. When that motion was denied, STC filed a second notice of appeal from the denial of its motion seeking leave to amend. Taking the two notices of appeal together, we conclude that STC sufficiently manifested its intent to appeal from both orders and thus complied with Rule 3(c).

*Torres*, a more recent Supreme Court decision relating to Rule 3(c), does not require a different result. *Torres* involved a separate provision of Rule 3(c), which requires that the notice of appeal designate the "party or parties taking the appeal." While *Torres* held that failure to comply with this requirement is a jurisdictional defect, it specifically noted that this holding did not alter the *Foman* principle in favor of finding compliance by liberally construing the rules. *Torres*, 487 U.S. at 316, 108 S.Ct. at 2408.

Although we do not attach pivotal weight to it, we note the presence of the Clerk's notation on the second notice of appeal stating that it would be "Construed as a Notice of Re–Instatement of Docket # 90–7170," suggesting the strong possibility that both STC and the Clerk intended to reinstate the previous appeal. Skuld can reasonably be said to have been on notice of this likelihood, since the copy of the notice of appeal served upon Skuld by the Clerk presumably also carried this notation. *See* Fed.R.App.P. 3(d) ("[t]he clerk of the district court shall serve notice of the filing of a notice of appeal by mailing a copy thereof to counsel of record of each party other than the appellant"). Moreover, given that the merits of the summary judgment ruling were fully argued in the briefs and at oral argument herein, Skuld cannot persuasively claim that it was misled or unfairly prejudiced. *See Foman*, 371 U.S. at 181, 83 S.Ct. at 229. These factors, while not dispositive, lend support to our conclusion that "in light of all the circumstances, the Rule ha[s] been complied with." *Torres*, 487 U.S. at 316, 108 S.Ct. at 2408.

## II. *Choice of Law*

Having found jurisdiction to review the grant of summary judgment as well as the denial of the motion to amend, we move to the central issue on this appeal—the choice of law question. STC contends that the district court erred in determining that Connecticut law was inapplicable to this litigation, principally because it failed to characterize Connecticut's direct action statute as either substantive or procedural. According to STC, Connecticut's direct action statute is procedural and thus must be applied by a federal court sitting in Connecticut. STC also argues that even if Connecticut's direct action statute is substantive it should be applied under appropriate choice of law rules. For the reasons that follow, we agree with the district court that Connecticut's substantive laws have

no bearing on this litigation, and we are not persuaded that Connecticut's direct action statute is procedural, rather than substantive law.

■ As a preliminary matter, we note that federal admiralty law neither authorizes nor forecloses a third party's right to directly sue an insurance company. *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1487 (11th Cir.1986). A state may choose to grant a third party a right of direct action against a maritime insurer of another, "at least where the state action is not in conflict with any feature of substantive admiralty law or any remedy peculiar to admiralty jurisdiction." *Id.; see also Cushing v. Maryland Casualty Co.*, 198 F.2d 536, 538–39 (5th Cir.1952), *rev'd on other grounds*, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954). However, uniformity is of great importance in admiralty law, *see Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 401, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339 (1970); indeed, the reason for the conferral of federal admiralty jurisdiction was to protect the maritime industry through the development of a uniform body of admiralty law. *Washington v. Dawson & Co.*, 264 U.S. 219, 224, 44 S.Ct. 302, 304, 68 L.Ed. 646 (1924); *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir.1975); *Maru Shipping Co. v. Burmeister & Wain Am. Corp.*, 528 F.Supp. 210, 214 (S.D.N.Y. 1981). Nonetheless, the Supreme Court did create a limited exception to the long-established policy favoring uniformity in admiralty law in *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). *Wilburn Boat* recognized the strong state interest in regulating areas such as insurance, and held that state law could be applied in the absence of a controlling federal statute or rule. *See id.* at 320–21, 75 S.Ct. at 374; *see also Steelmet*, 779 F.2d at 1490 (state direct action statute available in admiralty action under *Wilburn Boat* doctrine). Thus, while Connecticut's direct action statute may be properly applied in admiralty cases, the questions presented here are whether it must yield to appropriate choice of law rules and, if so, whether those rules

do or do not require that Connecticut law be applied in this particular case.

■ A federal court sitting in admiralty must apply federal choice of law rules. *See Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 1988 WL 75262, 1988 U.S.Dist.LEXIS 7051 at 7 (S.D.N.Y. July 13, 1988); *Ahmed v. American S.S. Owners Mut. Protection & Indem. Ass'n*, 444 F.Supp. 569, 571 (N.D.Cal.1978), *aff'd in part, remanded in part on other grounds*, 640 F.2d 993 (9th Cir.1981); *see also Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–10, 90 S.Ct. 1731, 1733–34, 26 L.Ed.2d 252 (1970) (applying federal choice of law rules in admiralty case); *Lauritzen v. Larsen*, 345 U.S. 571, 583–91, 73 S.Ct. 921, 929–32, 97 L.Ed. 1254 (1953) (same). In its brief, STC cites *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), for the proposition that federal courts must always look to the choice of law doctrine of the forum state. We think *Klaxon* is inapposite because the *Klaxon* rule applies only to federal courts exercising diversity jurisdiction and does not govern suits in admiralty. *Siegelman v. Cunard White Star, Ltd.*, 221 F.2d 189, 192–93 (2d Cir.1955); *see also Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir.1980) (*Klaxon* rule inapplicable in federal question case), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). Accordingly, this being a suit in admiralty, we apply federal choice of law rules.

## A. Direct Action Statute

■ Before engaging in choice of law analysis, we first address STC's argument that Connecticut's direct action statute is procedural and therefore not subject to choice of law rules. Characterizing direct action statutes as either procedural or substantive has long been recognized as problematic. *See generally* Speidel, *Extraterritorial Assertion of the Direct Action Statute: Due Process, Full Faith and Credit and the Search for Governmental Interest*, 53 Nw.U.L.Rev. 179, 212–14 (1958); Note, *Direct–Action Statutes:*

*Their Operational and Conflict-of-Law Problems,* 74 Harv.L.Rev. 357, 387–89 (1960). Additional problems are presented here by the special considerations attendant to the existence of federal admiralty jurisdiction.

STC argues that the Connecticut direct action statute is procedural because it transfers to the injured third party the insured's right to indemnity, and thus is "merely creating a method of executing upon the proceeds of the insurance policy." Some courts, following this rationale, have found certain direct action statutes to be procedural. *See, e.g., Davis v. Furlong,* 328 N.W.2d 150, 152–53 (Minn.1983); *Macey v. Crum,* 249 Ala. 249, 251–52, 30 So.2d 666, 668 (1947). Other courts, however, have found that particular direct action statutes are substantive in character because they create a separate and distinct right of action against the insurer. *See, e.g., Hertz Corp. v. Piccolo,* 453 So.2d 12, 14–15 (Fla.1984); *Oltarsh v. Aetna Ins. Co.,* 15 N.Y.2d 111, 116, 256 N.Y.S.2d 577, 580–81, 204 N.E.2d 622, 624–25 (1965).

STC principally relies on *Morewitz v. West of England Ship Owners Mutual,* 896 F.2d 495 (11th Cir.1990), to support its assertion that direct action statutes in admiralty are procedural. The issue in *Morewitz* was whether a federal court had subject matter jurisdiction over an action by an administrator of the estates of deceased seamen against their ship's insurer. The Eleventh Circuit Court of Appeals held that because the action concerned a marine insurance contract it was properly within the district court's admiralty jurisdiction. *Id.* at 498–99.

The plaintiffs in *Morewitz* claimed standing to sue under an English bankruptcy statute that provided judgment creditors with a direct action against a bankrupt's insurer. The district court concluded that the action was based on English bankruptcy law, not admiralty law, and therefore found that it lacked subject matter jurisdiction over the suit. The Eleventh Circuit reversed, finding the English statute irrelevant to the question of subject matter jurisdiction, "for it is well settled that a suit on a contract of marine insurance falls within our federal admiralty jurisdiction." *Id.*

The parties in *Morewitz* did not dispute the applicability of English law. The Eleventh Circuit therefore did not need to reach this issue; nonetheless, in footnote dictum the court suggested that choice of law analysis might not point to English law:

[W]e are not so sure that an extended inquiry into choice of law rules would show that the English statute is applicable.... The cases we have reviewed, although not addressing the choice of law issue directly, indicate that the forum state's law may be the applicable law for purposes of applying any direct action statute.

*Id.* at 499 n. 5 (citations omitted).

As the *Morewitz* court recognized, the question whether a direct action statute is automatically applicable in admiralty as forum law apparently has not been directly addressed. Although it might be argued that *Wilburn Boat* addressed this issue *sub silentio,* we find this argument unpersuasive. *Wilburn Boat* simply held that in the absence of a controlling federal admiralty principle, state law could be applied in an admiralty case; it did not reach the issue of *which* state's law would apply. *See Wilburn Boat,* 348 U.S. at 320–21, 75 S.Ct. at 374 (remanding to district court "for a trial under *appropriate* state law") (emphasis added). None of the cases cited in footnote five in *Morewitz* as support for the proposition that forum state law "may be the applicable law for purposes of applying any direct action statute" dealt with the choice of law issue. Indeed, one of the cases seems to stand for the opposite proposition, implicitly recognizing that direct action statutes are subject to choice of law analysis. *See Steelmet,* 779 F.2d at 1487–88 (relying on *Wilburn Boat* and stating the first analytical step is to "identify the state law involved").

To the extent the dictum in footnote five of *Morewitz* can be read to support the proposition that a federal court sitting in admiralty must apply a direct action statute as the procedural law of the forum state, without any choice of law analysis,

we decline to follow it. Instead, we follow the rationale articulated by this Court in *Collins v. American Automobile Insurance Co.*, 230 F.2d 416 (2d Cir.), *cert. dismissed*, 352 U.S. 802, 77 S.Ct. 20, 1 L.Ed.2d 37 (1956), in which we held in a diversity context, that a direct action statute was substantive and subject to choice of law rules. In *Collins* we recognized the right created by a direct action statute as a substantive one because it creates a right of action against a defendant where no such right previously existed. *Id.* at 421–22; *see also Morewitz*, 896 F.2d at 500–01 (Tjoflat, J., concurring) (disagreeing with majority's statement that direct action statute does not create rights; statute " 'vests' a substantive right in the third party"). We think the same concerns articulated in *Collins* are present in this admiralty suit.

*Collins* examined the interests served by choice of law rules and the limitations imposed on the doctrine. Choice of law rules prevent "substantial variation as a result of choice of forum in the rights and duties arising from a given legal situation." *Collins*, 230 F.2d at 421. However, in order to promote orderly administration of justice and the integrity of courts' local rules, some laws are deemed procedural and not subject to choice of law rules. *Id.* at 421–22; *see also* Restatement (Second) of Conflict of Laws § 122 and comment a (1971) (discussing state's right to apply own procedural law). Unfortunately, the labels "substantive" and "procedural" are not easily applied. *See, e.g., Sun Oil Co. v. Wortman*, 486 U.S. 717, 726, 108 S.Ct. 2117, 2124, 100 L.Ed.2d 743 (1988) ("[e]xcept at the extremes, the terms 'substance' and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn"); *Collins*, 230 F.2d at 421 ("more obfuscation than clarification is achieved through the undiscriminating use of the labels 'procedural' and 'substantive' "). Deference to state procedural laws, moreover, does not require that laws vesting significant substantive rights be deemed procedural merely because they have some procedural effect.

In this case, applying Connecticut's direct action statute as procedural law is particularly inappropriate. STC's aim in bringing suit under Connecticut's direct action statute was clearly to take advantage of the significant substantive right created by that statute. In New York, where STC obtained its arbitration award, a judgment creditor is barred from bringing an action against a marine insurer. N.Y.Ins.Law §§ 2117(b), 3420(i) (McKinney 1985); *see also Ahmed*, 640 F.2d at 995–96 (New York's direct action statute "precludes direct actions suits based on marine protection and indemnity insurance"). While STC's frustration over its inability to obtain satisfaction of its multi-million dollar arbitration award is understandable, we do not think that applying Connecticut's direct action statute under a strained designation as procedural law is the appropriate solution. This situation would create the "substantial variation" in rights and duties as a result of choice of forum that choice of law doctrine was designed to prevent. *Collins*, 230 F.2d at 421. Moreover, it would run counter to the strong federal admiralty interests of uniformity and predictability.

Accordingly, we find that Connecticut's direct action statute must yield in this admiralty suit to federal choice of law rules.

B.  Federal Choice of Law Analysis

■  In determining the law applicable to this admiralty action we initially look to *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). *Lauritzen* dealt with choice of law in a maritime personal injury action under the Jones Act; however, its broad choice of law principles are not limited to maritime torts, but "were intended to guide courts in the application of maritime law generally." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959). *Lauritzen's* approach to choice of law issues is relevant in addressing matters involving maritime contracts. *See Gulf Trading & Transp. Co. v. The M/V Tento*, 694 F.2d 1191, 1194 (9th Cir.1982), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983); *Rainbow*

*Line, Inc. v. M/V Tequila*, 480 F.2d 1024, 1026 (2d Cir.1973).

*Lauritzen* set forth seven factors to be weighed in determining the law to be applied to maritime torts, including the place where the contract was made, the accessibility of the foreign forum, and the law of the forum. *Lauritzen*, 345 U.S. at 583–92, 73 S.Ct. at 929–33. In *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Supreme Court elaborated on this analytical test, stressing its flexibility and adding an additional factor to be weighed—the shipowner's base of operations. *Hellenic Lines*, 398 U.S. at 308–09, 90 S.Ct. at 1733–34.

Because *Lauritzen* and *Hellenic Lines* were most relevant in a tort context, varying tests evolved in lower courts to resolve choice of law questions in admiralty contract cases. All of them were based, however, on the *Lauritzen* principle of resolving conflicts "by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Lauritzen*, 345 U.S. at 582, 73 S.Ct. at 928. The Fifth Circuit, for example, has held that the law governing a marine insurance contract is the law of the state where the contract was issued and delivered. *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1261 (5th Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2926, 53 L.Ed.2d 1063 (1977). Other courts have applied "the law of the state with the most significant nexus with the insurance contract." *Healy Tibbitts Constr. Co. v. Foremost Ins. Co.*, 482 F.Supp. 830, 835 (N.D.Cal.1979); *see Ahmed*, 444 F.Supp. at 571. Finally, the Restatement of Conflict of Laws lists the following contacts to be weighed in determining choice of law in contract cases: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2) (1971).

An extended analysis is not necessary in the present case, since under any of the above tests it is plain that Connecticut law is inapplicable. The insurance contract was negotiated, issued and signed in Oslo, Norway. The "Go–Go Runner" was owned by a Panamanian corporation, managed by a Belgian corporation and insured by Skuld, a Norwegian insurance association. The vessel sank off the coast of Mozambique on the east coast of Africa, while traveling from Brazil to India. The cargo on board was owned by STC, an Indian corporation. As the magistrate noted, the only connection Connecticut has with the insurance policy is the presence in the state of Skuld's exclusive U.S. agent. We agree with the lower court that this was an insufficient nexus to require that Connecticut law be applied to this suit, and we therefore affirm the grant of summary judgment in favor of Skuld.

Since we find that the grant of summary judgment dismissing the complaint was appropriate under federal choice of law analysis, we need not decide if the choice of law clause incorporated into the agreement between Skuld and Euroam additionally requires that STC's suit be dismissed. However, because a contractual choice of law clause generally takes precedence over choice of law rules, *see Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir.1988), we note that the clause herein would not alter our decision. The choice of law provision, incorporated from Skuld's 1988 or 1983 "Statutes and Rules," requires the application of either Norwegian or Panamanian law, not Connecticut law.

### III. *Denial of Leave to Amend*

■ Finally, we consider STC's argument that the district court abused its discretion in denying STC's motion seeking leave to amend its complaint to add additional causes of action based on Norwegian and Panamanian law.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave of the court or written consent of the adverse party is required to amend a pleading after a responsive pleading has been filed. Rule

15(a) further states that leave of the court "shall be freely given when justice so requires." Thus, amendment should be allowed "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Here, STC waited until judgment was entered dismissing its complaint before seeking leave to amend. When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly. *See, e.g., Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985) (per curiam); *Twohy v. First Nat'l Bank of Chicago,* 758 F.2d 1185, 1196 (7th Cir.1985); *Union Planters Nat'l Leasing, Inc. v. Woods,* 687 F.2d 117, 121 (5th Cir.1982); *see also* 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1489 (1990). As one court stated, "[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir.1967).

In addition to undue delay, it is not unreasonable to impute lack of good faith to STC. STC waited nineteen months after Skuld first challenged the applicability of Connecticut law before attempting to plead additional causes of action based on foreign law. Furthermore, when STC did seek leave to amend, it did not file a proposed amended complaint. *See, e.g., Twohy,* 758 F.2d at 1197 (failure to include amended complaint with motion, while not required, indicates lack of diligence and good faith). Skuld contends that STC deliberately chose not to amend its complaint earlier to include causes of action based on foreign law because any admission that foreign law applied to this case would have increased the chance of dismissal on forum selection clause or *forum non conveniens* grounds. The background herein lends credence to Skuld's claim that STC's decision not to plead the additional causes of action was a tactical one.

We conclude that the district court did not abuse its discretion in denying leave to amend. The delay in seeking leave to amend, for which STC offered no explanation, was unreasonably long and apparently lacked a good faith basis. Under these circumstances, the rule did not require that STC be granted leave to amend.

We have considered appellant's remaining arguments and find them to be without merit. The judgments of the district court are affirmed. Each party shall bear its own costs.